RECORD NO. 14-2334

In The

# United States Court of Appeals
### For The Fourth Circuit

## WYNN'S EXTENDED CARE, INC.,

*Plaintiff – Appellee,*

**v.**

## PENNY L. BRADLEY,

*Defendant – Appellant.*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
AT HARRISONBURG**

––––––––––––

## BRIEF OF APPELLANT

––––––––––––

Thomas D. Domonoske
ATTORNEY AT LAW
461 Lee Avenue
Harrisonburg, Virginia 22802
(540) 442-7706

*Counsel for Appellant*

Timothy E. Cupp
CUPP & CUPP, PC
1951 Evelyn Byrd Avenue, Suite D
Harrisonburg, Virginia 22803
(540) 432-9988

*Counsel for Appellant*

## TABLES OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................... iv

JURISDICTIONAL STATEMENT .................................................................... 1

STATEMENT OF THE ISSUES ......................................................................... 1

STATEMENT OF THE CASE ............................................................................ 2

    PROCEDURAL HISTORY ......................................................................... 2

    STATEMENT OF FACTS ........................................................................ 6

SUMMARY OF ARGUMENT ......................................................................... 16

ARGUMENT ..................................................................................................... 20

STANDARD OF REVIEW ............................................................................... 20

I.    THE SUMMARY JUDGMENT SHOULD BE REVERSED
       BECAUSE AT MINIMUM DISPUTED ISSUES OF
       MATERIAL FACT EXIST REGARDING WYNN'S
       LIABILITY FOR THE FALSE STATEMENTS MADE BY
       ITS CHOSEN DEALER .................................................................... 22

       A.    Wynn's arrangement with its dealers like Armstrong
            Auto raises an issue of material fact about whether
            Armstrong Auto made false statements as an agent for
            Wynn's .................................................................................. 22

            1.    Under Virginia law, agency is determined by the
                 facts and circumstances of each case, not by what
                 the parties call their relationship ..................................... 22

i

2. A reasonable jury could find that Armstrong Auto was Wynn's agent to select, negotiate and explain the Wynn's service contract because of the express authority in the Dealer Agreement and Wynn's expectations of its dealers ...............................................25

3. Because evidence existed that Armstrong Auto was Wynn's agent, Armstrong Auto's false statements can show a violation of the VCPA ..............28

B. Wynn's authorizing Armstrong Auto to select, negotiate and explain its service contract raises an issue of fact whether Armstrong Auto's false statements were made with Wynn's apparent authority ...............................................32

1. Under the doctrine of apparent authority, a third party's reasonable belief that an agent is vested with authority can establish a principal's liability ...................32

2. Armstrong Auto's false representations were made under Wynn's apparent authority because Wynn's held Armstrong Auto out as the entity with whom Bradley should interact ...................................................34

3. Because evidence existed that Armstrong Auto acted with apparent authority, summary judgment should not have been entered against the VCPA and the Magnuson-Moss claims ....................................37

C. Under agency by estoppel, Wynn's written direction that Bradley contact Armstrong Auto with her questions about Wynn's actions raises a genuine issue of material fact about whether Wynn's can be held liable for Armstrong Auto's false statement ............................................39

1.      Even in the absence of an actual agency, a
        principal can be held liable for another's
        statements under agency by estoppels ............................39

2.      Because Bradley justifiably relied on the letter
        from Wynn's and took her questions to Armstrong
        Auto, under agency by estoppel Wynn's is liable
        for Armstrong Auto's answers .......................................41

II.     BECAUSE THE AMENDED CLAIM WAS NOT BASED ON
        AGENCY, THE TRIAL COURT ABUSED ITS DISCRETION
        BY DENYING THE AMENDED VCPA CLAIM ............................42

CONCLUSION .................................................................................46

REQUEST FOR ORAL ARGUMENT ................................................47

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

# TABLES OF AUTHORITIES

**Page(s)**

## CASES

*Acordia of Virginia v. Genito Glenn, LP,*
263 Va. 377,560 S.E.2d 246 (2002) .............................................................24

*Anderson v. Liberty Lobby,*
477 U.S. 242 (1986)...................................................................................20

*Bloxom v. Rose,*
151 Va. 590, 144 S.E. 642 (1928) ...........................................17, 24, 25, 26

*Board of Sup. v. King Land Corp.,*
238 Va. 97, 380 S.E.2d 895 (1989) .............................................................28

*Bowman v. Commonwealth,*
201 Va. 656, 112 S.E.2d 887 (1960) ...........................................................28

*Carlson v. General Motors Corp.,*
883 F.2d 287 (4th Cir. 1989) .......................................................................38

*Celotex Corp. v. Catrett,*
477 U.S. 317 (1986)...................................................................................20

*Chandler v. Kelley,*
149 Va. 221, 141 S.E. 389 (1928) ...............................................................24

*Charles E. Brauer Co., Inc. v. NationsBank of Virginia, N.A.,*
251 Va. 28, 466 S.E.2d 382 (1996) .............................................................38

*Cosey v. Prudential Ins. Co. of Am.,*
735 F.3d 161 (4th Cir. 2013) .......................................................................20

*Dash v. Mayweather,*
731 F.3d 303 (4th Cir. 2013) .......................................................................20

*DHA*, *Inc. v. Leydig*,
  231 Va. 138, 340 S.E.2d 831 (1986) ............................................................25

*Dimos v. Stowe*,
  193 Va. 831, 71 S.E.2d 186 (1952) ............................................................23

*Drake v. Livesay*,
  231 Va. 117, 341 S.E.2d 186 (1986) ............................................................25

*Dudley v. Estate Life Ins. Co*.,
  220 Va. 343, 257 S.E.2d 871 (1979) ............................................................33

*Felty v. Graves-Humphreys Co*.,
  818 F.2d 1126 (4th Cir. 1987) ............................................................20

*Galustian v. Peter*,
  591 F.3d 724 (4th Cir. 2010) ............................................................21

*Hadeed v. Medic-24, Ltd*.,
  237 Va. 277, 377 S.E.2d 589 (1989) ............................................................25

*Hardin v. Alexandria Ins. Co*.,
  90 Va. 413, 18 S.E. 911 (1894) ............................................................40

*Holmes v. LG Marion Corp*.,
  258 Va. 473, 521 S.E.2d 528 (1999) ............................................................38

*Hooters of America*, *Inc. v. Phillips*,
  173 F.3d 933 (4th Cir. 1999) ............................................................38

*Jefferson Standard Life Ins. Co v. Hedrick*,
  181 Va. 824, 27 S.E.2d 198 (1943) ............................................................27

*Jones v. Conwell*,
  227 Va. 176, 314 S.E.2d 61 (1984) ............................................................28

*Kern v. J.L. Barksdale Furniture Corp*.,
  224 Va. 682, 299 S.E.2d 365 (1983) ............................................................33

*Laber v. Harvey*,
    438 F.3d 404 (4th Cir. 2006) .................................................................20, 43

*MacKenzie v. Chrysler Corp.*,
    607 F.2d 1162 (5th Cir. 1979) .......................................................................38

*McDonald v. Hampton Training School for Nurses*,
    254 Va. 79, 486 S.E.2d 299 (1997) ...............................................................24

*McIntyre v. Smyth*,
    108 Va. 736, 62 S.E. 930 (1908) ...................................................................24

*Mosell Realty Corp. v. Schofield*,
    183 Va. 782, 33 S.E.2d 774 (1945) ...................................................18, 33, 36

*Murphy v. Holiday Inns, Inc.*,
    216 Va. 490, 219 S.E.2d 874 (1975) .............................................................24

*Nationwide Ins. Co. v. Patterson*,
    229 Va. 627, 331 S.E.2d 490 (1985) .......................................................23, 27

*Natrella v. Board of Zoning Appeals*,
    231 Va. 451, 345 S.E.2d 295 (1986) .............................................................28

*Neff Trailer Sales, Inc. v. Dellinger*,
    221 Va. 367, 269 S.E.2d 386 (1980) .............................................................34

*Owens v. DRS Automotive*,
    - Va. - ,764 S.E.2d 256 (2014).....................................................................30

*Quince Orchard Valley Citizens Ass'n, Inc. v. Hodel*,
    872 F.2d 75 (4th Cir. 1989) ...........................................................................21

*Reistroffer v. Person*,
    247 Va. 45, 439 S.E.2d 376 (1994) ...............................................................23

*Royal Indemnity Co. v. Hook*,
    155 Va. 956, 157 S.E. 414 (1931) .................................................................25

*Sanchez v. Medicorp Health System*,
270 Va. 299, 618 S.E.2d 331 (2005) ......................................................*passim*

*Saval v. BL Ltd.*,
710 F.2d 1027 (4th Cir. 1983) ........................................................38

*Schwartz v. Brownlee*,
253 Va. 159, 482 S.E.2d 827 (1997) ................................................25

*Scott v. Family Dollar Stores, Inc.*,
733 F.3d 105 (4th Cir. 2013) .................................................21, 45

*Seney v. Rent-A-Center*,
738 F.3d 631 (4th Cir. 2013) ........................................................37

*Shumate's Case*,
56 Va. (15 Gratt.) 653 (1860) ......................................................28

*Smith v. Grenadier*,
203 Va. 740, 127 S.E.2d 107 (1962) ................................................24

*Southern Amuse't Co. v. Ferrell*,
125 Va. 429, 99 S.E. 716 (1919) ....................................................33

*Surprenant v. Board For Contractors*,
30 Va. App. 165, 516 S.E.2d 220 (1999) ......................................30

*Thaxton v. Commonwealth*,
211 Va. 38, 175 S.E.2d 264 (1970) ................................................24

*Turner v. Buick Corp.*,
201 Va. 693, 112 S.E.2d 911 (1960) ................................................25

*U.S. v. National Financial Services, Inc.*,
98 F.3d 131 (4th Cir. 1996) ........................................................21

*Valley Acceptance Corp. v. Glasby*,
230 Va. 422, 337 S.E.2d 291 (1985) ................................................28

*Virginia Iron, Coal & Coke Co. v. Odle's Adm'r*,
128 Va. 280, 105 S.E. 107 (1920) ................................................23

*Virginia Vermiculite, Ltd. v. W.R. Grace & Company- Connecticut*,
156 F.3d 535 (4th Cir. 1998) ........................................................38

*Walsh v. Ford Motor Co.*,
807 F.2d 1000 (D.C. Cir. 1986) ....................................................38

*Wilkins v. Peninsula Motor Cars, Inc.*,
266 Va. 558 S.E.2d 581 (2003) ....................................................30

*Wright v. Shortridge*,
194 Va. 346, 73 S.E.2d 360 (1952) ..............................................34

## STATUTES

15 U.S.C. § 2301(8) .............................................................................37

15 U.S.C. § 2302(a) ............................................................................37

15 U.S.C. § 2310(d) ............................................................................37

28 U.S.C. § 1291 ...................................................................................1

28 U.S.C. § 1332(a) ..............................................................................1

Va. Code § 59.1-196, *et seq.*............................................................31

Va. Code § 59.1-197 ..........................................................................28

Va. Code § 59.1-198 ..........................................................................29

Va. Code § 59.1-200(A)(5) ................................................................31

Va. Code § 59.1-200(A)(8) ..........................................................30, 31

Va. Code § 59.1-200(A)(14)..............................................................31

**RULES**

Fed. R. Civ. P. 15(a)...........................................................................21

Fed. R. Civ. P. 15(a)(3)......................................................................42

Fed. R. Civ. P. 56(a)..........................................................................20

**OTHER AUTHORITIES**

17 Michie's Jurisprudence, Statutes, § 72 ...............................................28

Black's Law Dictionary (8th ed. 2004) ...........................................17, 32

Fletcher Cyclopedia Corporations (Perm. Ed, Vol. 2)............................33

Huffcut on Agency (2d Ed.) § 4.............................................................23

Restatement (Second) of Contracts........................................ 18-19, 38, 40

## JURISDICTIONAL STATEMENT

The District Court had subject matter jurisdiction over Penny L. Bradley's (Bradley) Counterclaim under 28 U.S.C. § 1332(a). More than $75,000.00 was at issue and complete diversity exists between the parties. Bradley is a citizen of Virginia and Wynn's Extended Care, Inc. (Wynn's) is a California corporation with its principal place of business in Florida.

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. On November 6, 2014, the Hon. Michael Urbanski, United States District Judge, for the Western District of Virginia, entered a final order. Bradley filed her Notice of Appeal on December 5, 2014.

## STATEMENT OF THE ISSUES

Bradley appeals the District Court's grant of summary judgment to Wynn's on her Virginia Consumer Protection Act (VCPA) and Magnuson-Moss Warranty Trade Improvement Act (Magnuson-Moss) claims and also appeals the denial of her Motion to Amend. Regarding the summary judgment ruling, the following issues are raised:

Issue 1: Does Wynn's arrangement with its dealers like Armstrong Auto raise an issue of material fact about whether Armstrong Auto acted as Wynn's agent when Armstrong Auto made false statements about the Wynn's service contract? (Argument I, A).

Issue 2: Does Wynn's authorizing Armstrong Auto to negotiate and explain its service contract raise an issue of material fact about whether Armstrong Auto's false statements about the Wynn's service contract were made under Wynn's apparent authority? (Argument I, B).

Issue 3: Under Virginia's law of agency by estoppel, does Wynn's written statement to Bradley that she should ask Armstrong Auto her questions about Wynn's service contract raise an issue of material fact about whether Wynn's can be held liable for Armstrong Auto's false statement? (Argument I, C).

The Motion to Amend decision raises the following issue:

Issue 4: Did the trial court abuse its discretion by deciding that the amended VCPA claim was based on agency law when the claim was based on Wynn's own conduct in not pricing the service contract according to the contractually required method. (Argument II).

## STATEMENT OF THE CASE

**PROCEDURAL HISTORY**

This case between Bradley and Wynn's started as a case between Bradley and two other defendants, Armstrong Auto, Inc., (Armstrong Auto) and Credit Acceptance Corporation (CAC). Bradley filed that case in Virginia state court, the Circuit Court of Rockingham County. Under the Truth in Lending Act claim, CAC removed the matter to federal court, and it then compelled arbitration. In the

arbitration, Bradley added Wynn's as a Defendant.  In response, on December 12, 2013, Wynn's filed its Complaint and Petition to Enjoin Arbitration in the United States District Court for the Western District of Virginia.  On January 22, 2014, Bradley filed her Answer and Counterclaim.  Bradley agreed to dismiss Wynn's from the arbitration and seek resolution of her claims against Wynn's in federal court.

Bradley's filed counterclaims for fraud, violations of the VCPA, and violation of Magnuson-Moss.  All these claims were based on representations made by Armstrong Auto to Bradley about a Wynn's service contract for a used car that she purchased from Armstrong Auto.  On February 18, 2014, Wynn's filed a Motion to Dismiss and asserted it could not be held liable for Armstrong Auto's statements.  After briefing, discovery was stayed pending the District's Court decision.  On May 27, 2014, the Motion to Dismiss was denied and Wynn's answered the counterclaim on June 10, 2014.

Discovery was conducted over the summer of 2014, including several discovery related motions.  The last deposition taken on September 15, 2014, was the corporate deposition of Wynn's.  On September 17, 2014, both Bradley and Wynn's filed motions for summary judgment.  On September 26, 2014, Bradley filed a Motion for Sanctions regarding a prior discovery Order about Wynn's agreement with Armstrong Auto.  On October 1, 2014, Bradley filed a Motion for

Sanctions concerning Wynn's lack of compliance with a prior discovery Order about a Wynn's profit-sharing agreement and with Wynn's 30(b)(6) deposition duties.

On October 2, 2014, Bradley filed a Motion to Amend her counterclaims, and attached her proposed amended counterclaims. She sought permission to either include in this case her VCPA and fraud claims that were discovered in September 2014, or to have those claims proceed separately from the original claims. The new allegation is that Wynn's misrepresented the dollar amount of its service contract and that the true amount was several hundred dollars less. Regarding the new theory of liability, when Bradley took Wynn's deposition on September 15, 2014, she learned that the disclosed dollar amount of the Wynn's service contract was higher than the contractually required amount. One day after receiving the transcript of that deposition, Bradley informed Wynn's of the new theory of relief by letter dated September 26, 2014. That letter asked Wynn's whether it would agree to an amendment or agree that the new claim could proceed separately, but Wynn's did not respond. After Bradley filed her Motion to Amend, Wynn's objected to either relief.

On November 6, 2014, the District Court heard argument on the summary judgment motions, and then ruled from the bench. Regarding the VCPA and Magnuson-Moss claims, the District Court dismissed the claims against Wynn's

4

because it held Armstrong Auto was never an agent of Wynn's but only an independent contractor. (J.A. at 531 and 551-53, 28:6-14 and 48:18-50:21.) The District Court also held that neither apparent agency nor agency by estoppel existed. (J.A. at 553, 50:22-25). Although the District Court also discussed that Bradley unreasonably relied on the initial misrepresentation that the service contract was included in the transaction, (J.A. at 543, 40:2-16), the Court both limited this analysis to the fraud claim and appears to be discussing the issue of whether the service contract should have been included in the price of the car, like a warranty. (J.A. at 554-56, 51:9-20, 52:25-2, 53:15-24). The Court then dismissed the Magnuson-Moss claim and held no contract existed and that Wynn's merely rejected an application. (J.A. at 557, 54:15-24). It similarly dismissed the VCPA claim on the grounds that no agency existed. (J.A. at 558, 55:2-10).

The District Court also denied the Motion to Amend for the same reason and stated "those are additional representations which rely on an agency theory which the Court rejects." (J.A. at 559, 56:7-11). It dismissed all the other pending motions as moot. (J.A. at 560, 57:20-22). Although Wynn's filed some documents under seal and other Wynn's documents were reviewed *in camera* by the Court without presentation to Bradley or her counsel, none of those documents were discussed by the Court as pertinent to its legal rulings.

## STATEMENT OF FACTS

Evidence of the following facts were included in the Court's record when it considered the summary judgment motions. On April 4, 2012, Wynn's and Armstrong Auto entered into a Dealer Agreement. (J.A. at 50, first provided by Wynn's in the Motion to Dismiss briefing; J.A. at 184, Para. 3, and J.A. at 219, Para. 3). The contract is obviously a form contract as shown by the last lines of the third page. (J.A. at 52). Pursuant to this agreement, Wynn's gave Armstrong Auto the power to "sell Wynn's service contracts." (J.A. at 50, Para. 1(B)(1)). Wynn's confirmed this authority at its deposition by stating "The dealer is an agent in the way of selling the product on behalf of CAC and Wynn's . . . ." (J.A. at 407, 139:5-7).

Wynn's Dealer Agreement identifies Wynn's as the Administrator and the owner of a "vehicle service contract program." Wynn's Dealer Agreement requires Armstrong Auto to "remit to Administrator funds representing the Dealer Cost relating to each Wynn's Service Contract sold by the Dealer within thirty (30) days after the end of the month in which Dealer sells the Wynn's Service Contract, along with a properly executed copy of such Wynn's Service Contract."  (J.A. at 50, Para. 1(C)(1)). For a service contract covering a car, the dealer must sell the service contract on the same day as selling the used car. (*Id.*, Para. 1(B)(1)(b)).

6

Under this form Dealer Agreement, each Wynn's dealer agrees to "use its best efforts to market Wynn's Service Contracts pursuant to the Program and faithfully perform its duties in compliance with Administrator's instructions and procedures." (*Id.*, Para. 1(B)). Wynn's and Armstrong Auto agreed that Wynn's could direct how Armstrong sold service contracts for Wynn's. Armstrong Auto agreed to provide Wynn's contracts to customers "only on forms provided by Administrator and in accordance with Administrator's procedures." Armstrong Auto was to sell Wynn's contracts "subject to Administrator's programs, coverages, rules, regulations, and fees." (*Id.*, Para. 1(B) and 1(B)(1)(c)). The Dealer Agreement provides that Armstrong Auto was not given authority other than what is provided in the Dealer Agreement. (*Id.*, Paragraph 1(B)(6)).

Wynn's provides its dealers with a consumer brochure that instructs potential car purchasers to ask the dealer which Wynn's contract is right for them. (J.A. at 76; J.A. at 68-69, Interrogatory 2). The brochure is to be given to consumers (J.A. at 397, 113:12-24), and Wynn's expects those customers to ask the dealer which plan is right for them. (J.A. at 401, 117:23-25). Wynn's informs its dealers like Armstrong Auto that Wynn's is committed to offering them "profitable opportunities" related to selling used cars. (J.A. at 66; J.A. at 68-69, Interrogatory 2).

7

Although the Dealer Agreement allows Wynn's to direct how its dealers sell its contracts, Wynn's provides no ongoing monitoring or guidance to dealers like Armstrong about how to sell its service contracts. (J.A. at 72, Interrogatory 12). Although Wynn's claims that CAC was to provide supervision for how Armstrong Auto sold Wynn's service contracts, other than providing a Wynn's retail rate sheet, CAC knows of no supervision, oversight, or training it provided to Armstrong Auto regarding selling Wynn's service contracts. (J.A. at 366-67, 47:18-48:19). Also, CAC did not monitor how Armstrong Auto sold Wynn's service contracts. (J.A. at 366, 47:22-23).

Regarding how its dealers like Armstrong Auto are to price its service contract, Wynn's was to provide Armstrong Auto with a "Dealer Cost and Rate Chart." (J.A. at 50, Para. 1(B)(2)). The term "Dealer Cost" is crucial to the contractual agreement between Wynn's and Armstrong Auto, and it is referenced in the following subsections: Paragraph 1(C)(1); Paragraph 1(C)(2); Paragraph 1(C)(3); the top paragraph on page 2; the second paragraph on page 2; and Paragraph 1(E)(1). Furthermore, the amount of the Dealer Cost from the Rate Chart is pertinent to the duties and calculations set forth in the following paragraphs: Paragraph 1(C)(2); Paragraph 1(D)(1); and Paragraph 1(D)(2). Because the Dealer Cost represents the money a dealer must pay to Wynn's for each service contract, the Dealer Agreement's Rate Chart does not regulate the

retail price at which the dealer sells the service contract. The consumer's price will presumably be the Dealer Cost plus whatever profit or commission the dealer receives.

Both the first paragraph of the generic form Wynn's service contract and the specific one that Bradley signed give the same formula for determining the service contract price. (J.A. at 54, provided by Wynn's in its Motion to Dismiss briefing; J.A. at 200). Wynn's formula states that "[t]he Selling Dealer agrees that all sums paid by You under the terms of this Contract, excluding a commission earned by the Selling Dealer and an administrative fee earned by US, shall be submitted on Your behalf to National Casualty Company for the purpose of insuring the payment of Your claims under this Contract." The Wynn's administrative fee and the money to insure the contract should add together to form the Dealer Cost referenced in the Dealer Agreement. Thus, pursuant to both the Dealer Agreement and the terms of Wynn's service contract, the selling price to a consumer should be expressed by the following formula:

> Dealer's Commission
> + Wynn's Administrative Fee
> + Money for Insurance Company
> Consumer's Cost of Contract

On August 21, 2012, Bradley was a potential purchaser at Armstrong Auto who wanted to buy a used Honda hybrid only if it came with extended warranty coverage. (J.A. at 78-79 and 85, 10:8-11, 11:18-21, 21:8-12; J.A. at 95 and 9,

57:11-20, 61:6-15).  Throughout this transaction Armstrong Auto acted through Travis Armstrong and, as the corporate designee for Armstrong Auto at its deposition, he testified as follows:  "She told me she wouldn't buy the vehicle unless it could have a warranty." (J.A. at 95, 57:14-17).  Bradley agreed to the transaction only because Armstrong Auto assured her she would get coverage under the Wynn's contract. (J.A. at 80 and 85-86, 12:2-7, 21:13-22:4).

> So when you're on the lot talking to her about this vehicle, what was the discussion about whether a warranty was or was not available?
>     A.   I told her that we would go inside and we would put the VIN into the CAPS system.  If it said you could have a warranty, then you could.  And if it says you couldn't, you couldn't.
>         So that's when we went into my office and we put the VIN in, and it says it was eligible for a warranty, and she decided to purchase the vehicle.

(J.A. at 96, 58:2-11).

Consequently, on August 21, 2012, Bradley agreed to buy the car with the Wynn's coverage as offered by Armstrong Auto included in the total sale price and the financing. (J.A. at 14, Para. 6; J.A. at 193 and 195; J.A. at 80-81, 12:21-13:10).  The signing sequence shows that she first paid her down payment and then contracted for the car before even being directed to the Wynn's service contract document.  First, Armstrong Auto handed Bradley a large stack of so many documents that she was incapable of reading them. (J.A. at 131-132, 25:21-26:2).  Armstrong merely showed her where to sign and quickly flipped them over. (J.A.

10

at 132, 26:5-12). Armstrong Auto gave her the eighteen documents in the

following order:

1. Receipt No. 2560

2. Bill of Sale

3. Buyer's Order, with Additional Conditions of Sale on back

4. Agreement to Provide Insurance

5. Odometer Disclosure Statement

6. Disclosure Notice

7. Buyer's Guide

8. Application for Certification of Title and Registration

9. Disclosure Form

10. Consent and Authorization Form

11. Multi-State application

12. Credit Report Authorization Form

13. GAP Acceptance of Coverage

14. Buyer's Disclosure and Agreement for Starter Interruption Device

15. GAP Addendum

16. Truth in Lending Disclosure Acknowledgement

17. Retail Installment Contract

18. Wynn's Service Contract

19. Virginia Reassignment of Title Form

(J.A. at 328-29 and 332-35, Exhibit List and 143:19-5-146:2).  As explained by

Travis Armstrong, the first action he took was to take Bradley's downpayment.

(J.A. at 337, 148:16-21).  He then obtained her signature on the documents in the

order presented. (J.A. at 338-39, 149:5-150:7).  Thus, by the time she was shown

page one of the service contract, she had already paid her downpayment, and had

signed the Buyer's Order and the Retail Installment Contract; on each she

specifically had accepted the offer of the Wynn's service contract as part of

agreeing to buy the car.  When she signed the documents, she believed she was

getting the coverage she had been promised. (J.A. at 139, 42:7-11).

Contrary to Armstrong Auto's representation, the car Bradley bought was

ineligible for that type of Wynn's service contract. (J.A. at 14, Para. 11).  On

August 28, 2012, Wynn's voided the contract because Bradley's car was ineligible

for coverage. (J.A. at 15, Para. 12; J.A at 30).  On or after August 28, 2012,

Wynn's sent Bradley a letter that informed her to contact Armstrong Auto with any

questions about Wynn's action. (*Id.*).  That letter is not on Wynn's letterhead and is

not signed. (*Id.*).

Bradley did exactly what Wynn's instructed to do and contacted Armstrong

Auto with her questions. (J.A. at 138-39, 41:10-42:4).  Armstrong Auto told her

that the letter was a glitch in the computer system and that she should ignore it.

12

(J.A. at 379 and 384-85, 35:2-11 and 42:15-43:19).  Bradley believed what he told her because he was in the business and computer glitches do happen. (J.A. at 385, 43:7-22).

In February of 2013, Bradley still believed she had a service contract on her car and she needed repairs to the hybrid battery. (J.A. at 364-65, 10:12-11:20; J.A. at 416, 89:9-20; J.A. at 419, Para. 3).  She first learned that she had no coverage when she called Wynn's about getting the battery fixed. (J.A. at 141, 44:7-20).  After learning about the battery problem and that she had no Wynn's coverage, Bradley sent Armstrong Auto and CAC written notification, by counsel, that she was canceling the transaction. (J.A. at 415-16, 88:16-89:22, J.A. at 417).

For the Wynn's coverage, Bradley was charged $1,580.00, plus $39.50 in tax, for a total of $1,619.50 added to her total sale price. (J.A. at 193 and 195).  According to Armstrong Auto, if the service contract was not included in the transaction, the amount financed would have been less. (J.A. at 350-53, 124:5-125:8 and 126:23-127:19).  The presence of the service contract had no effect on the interest rate. (J.A. at 350, 124:13-17).  If the service contract was not included either the monthly payment would have been less or Armstrong would have shortened the term of the loan. (J.A. at 350-51, 124:21-125:8).  Subtracting $1,619.50 from the amount financed of $13,339.00 gives an amount financed of $11,719.50.

Bradley's account never received a proper credit from the Wynn's service contract cancellation. Wynn's claims that because it did not receive the taxes charged by Armstrong Auto, it had no obligation to refund the taxes and that any money collected by Armstrong Auto had to be returned by Armstrong Auto. (J.A. at 71-72, Interrogatory 10 and 11; J.A. at 467, 163:4-10; J.A. at 443). Armstrong Auto never refunded the taxes nor even discussed doing so. (J.A. at 348-49, 106:22-107:5).

If Armstrong had extended credit of $11,719.50 at 24.99% interest to be paid in monthly payments of $401.93, then 44 payments plus a final monthly payment of $536.48 would have been due. (J.A. at 356-59). Thus, without the service contract, the total of payments she would have owed under the Retail Installment Contract without lowering the monthly payment would have been $18,221.40. (J.A. at 359). Instead of that amount, after CAC applied whatever money was exchanged between it and Wynn's to Bradley's account, CAC showed the total of payments as having been reduced from $22,910.01 to $20,196.33, with no change in the payment amount. (J.A. at 373). Therefore, the improper initial inclusion of the Wynn's contract in the deal caused Bradley to be liable for almost $2,000.00 more over the life of her loan than if the service contract had never been mentioned. Moreover, she never received what she was promised- a car covered by a Wynn's service contract.

14

Wynn's knows that its dealers have included service contracts on ineligible vehicles over one hundred times in just a few years. (J.A. at 501). Wynn's has done nothing to solve the problem of dealers like Armstrong selling service contracts on ineligible vehicles; instead it believes that what occurred in the Bradley transaction is what it wanted to occur and that it has no other responsibility. (J.A. at 71-72, Interrogatory 10 and 11; J.A. at 406-07, 138:5-139:25).

In addition to Armstrong Auto's misrepresentation about the service contract, the price of the service contract was improperly inflated. As set forth in her Motion to Amend, in September 2014, Bradley discovered how to complete the formula to determine what the price should have been. (J.A. at 222). Based on the Wynn's contract formula, the following is how the price should have been set:

|   | |
|---|---|
| Armstrong Auto's Commission | $ 385.00 |
| + Wynn's Administrative Fee | $  80.00 |
| + Money for Insurance Company | $ 655.00 |
| True Cost of Contract | $1120.00 |

$1,120.00 is $460.00 dollars less than $1,580.00, and thus the service contract was priced $460.00 higher than it stated it would be. At its deposition, Wynn's acknowledged that in addition to the contracted amounts, the retail price included an undisclosed fee given to CAC. (J.A. at 468, 158:4-12). Wynn's set the retail rate in a chart it provided to Armstrong Auto. (J.A. at 185, Para. 11). Because of

15

Wynn's inflated pricing, Bradley taxes that she never received back were similarly inflated, and her account at CAC was even higher than it should have been.

## SUMMARY OF ARGUMENT

The District Court erred in its summary judgment ruling when it found as a matter of law that the evidence failed to raise an issue of fact about actual agency, apparent authority of an agent, or agency by estoppel.  Because all the claims as originally plead were dependent on Armstrong Auto's misrepresentations to Bradley concerning coverage of the Wynn's service contract, these claims were all dismissed.  The Court then denied the Motion to Amend because it held that the amended claims were also dependent on agency.  The District Court erred because the record includes sufficient evidence from which a jury could determine actual agency, apparent authority of an agent, and agency by estoppel. Also, the District Court erred because the amended claims were not dependent on agency, but involved conduct undertaken directly by Wynn's.

The Dealer Agreement between Wynn's and Armstrong Auto proves that Wynn's authorized Armstrong Auto to offer Wynn's coverage to potential customers under procedures set by Wynn's.  Wynn's corporate designee testified that Armstrong Auto was Wynn's agent for the purpose of selling the service contracts.  For all its dealers like Armstrong Auto, Wynn's expects and directs customers to ask the dealer which Wynn's service contract is right for them.  As

16

the entity who solicits contracts on Wynn's behalf, these dealers are the conduit by which Wynn's has the consumer get information.  As shown in the August 28, 2012 unsigned form letter, Wynn's standard practice is to refer customers to the dealers with questions about its actions.  The statement in the contract between Armstrong and Wynn's regarding not establishing an agency relationship does not control whether, as to third persons, like Bradley, Armstrong Auto can be Wynn's agent. *See Bloxom v. Rose*, 151 Va. 590, 598, 144 S.E. 642, 643 (1928).  At minimum, the disputed material facts allow the jury to infer that Armstrong Auto was Wynn's agent for the purpose of selecting, negotiating, and explaining its service contract.

As defined by the Virginia Supreme Court, apparent authority "concerns the '[a]uthority that a third party reasonably believes an agent has, based on the third party's dealings with the principal, even though the principal did not confer or intend to confer the authority.'" *Sanchez v. Medicorp Health System*, 270 Va. 299, 303, 618 S.E.2d 331, 333 (2005)(quoting Black's Law Dictionary 142 (8th ed. 2004)).  Because the evidence allows at least for an inference that Armstrong Auto was Wynn's agent, the doctrine of apparent authority can then make Wynn's liable for Armstrong Auto's conduct beyond his specific duties.

Wynn's business model is for the dealer to hold itself as knowledgeable about the service contract.  Wynn's holds these dealers out as the people who

17

solicit contracts on Wynn's behalf, and as a conduit by which Wynn's has its consumers get information. Travis Armstrong told Bradley that he would first have to check a computer system to see whether the car would be eligible for coverage, that he checked, and that the system confirmed it could be covered. Bradley believed him and agreed to buy the car because of that representation, and then signed the documents to buy the car before even being asked to sign the service contract. As shown by the August 28, 2012 letter, Wynn's then instructed Bradley to take any of her questions to Armstrong Auto. (J.A. at 30). Because she did exactly what Wynn's told her to do, then, as stated in *Mosell Realty Corp. v. Schofield*, 183 Va. 782, 791, 33 S.E.2d 774, 777 (1945), Wynn's cannot "deny that his apparent authority is real" to answer those questions. Wynn's uses dealers to speak for it, and it directs consumers to those dealers even when it knows those dealers are wrong about the scope of Wynn's coverage. At minimum, the disputed material facts allow the jury to infer the apparent authority of Armstrong Auto to make the representations on which Bradley relied.

Even if Armstrong Auto was not an actual agent of Wynn's, Wynn's can still be liable for his conduct under agency by estoppel. "Apparent or ostensible agency is sometimes described as an exception to the general principle that an employer is not vicariously liable for the negligence of an independent contractor." *Sanchez*, 270 Va. at 305, 618 S.E.2d at 334. Under the Restatement (Second) of

18

Agency 267, for agency by estoppel "a showing of justifiable reliance by the injured person upon the representations of the principal is required." *Id.* 270 Va. at 306, 618 S.E.2d at 334. The facts are undisputed that Wynn's sent the August 28 letter and instructed Bradley to take her questions to Armstrong Auto; Bradley's testimony is that she followed that instruction. Even if Armstrong Auto was never an actual agent of Wynn's, because Bradley justifiably relied on Wynn's instruction, a jury could find agency by estoppel.

Because a jury could find either agency, apparent authority, or agency by estoppel, both the VCPA and the Magnuson-Moss claims were improperly dismissed on summary judgment. Each of these statutes is designed to ensure integrity in the marketplace, and the false statements by Armstrong Auto violated these statutes. The summary judgment against these two claims should be reversed and the case remanded for further proceedings.

Additionally, the District Court abused its discretion in denying the Motion to Amend. It held that the amended claims were all dependent on the agency analysis. Actually, the amended claim set forth a VCPA claim based on Wynn's own conduct in improperly pricing its own service contract. The service contract contractually establishes the components of the service contract's price and provides the formula from which the price can be determined. In September 2014, after Bradley learned the amount necessary to complete the formula, Bradley

19

properly sought to either add that theory to the case, or to separate that theory from any res judicata effect of a final ruling in the case. Because the District Court mistakenly held the amendment was based on agency law, the denial of the Motion to Amend should be set aside.

## ARGUMENT

**STANDARD OF REVIEW**

For the summary judgment decision, this Court reviews the questions de novo and applies the same standard as the court below. *Cosey v. Prudential Ins. Co. of Am.*, 735 F.3d 161, 170-171 (4th Cir. 2013); *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1127-28 (4th Cir. 1987). Summary judgment shall be granted only when there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Dash v. Mayweather*, 731 F.3d 303, 310-11 (4th Cir. 2013); *Laber v. Harvey*, 438 F.3d 404 (4th Cir. 2006)(citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). On summary judgment "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986). The court must inquire "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251-252. Disposition by summary judgment is appropriate

only when the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. *U.S. v. National Financial Services*, *Inc.*, 98 F.3d 131, 135 (4th Cir. 1996).

Regarding the Motion to Amend decision, this Court reviews a "district court's decision to deny leave to amend a complaint for abuse of discretion, and it is our 'policy to liberally allow amendment in keeping with the spirit of Federal Rule of Civil Procedure 15(a).'" *Scott v. Family Dollar Stores*, *Inc.*, 733 F.3d 105, 112 (4th Cir. 2013)(citing *Galustian v. Peter*, 591 F.3d 724, 729 (4th Cir. 2010)). When deciding a Motion to Amend, a district court abuses its discretion by "resting its decision on a clearly erroneous finding of a material fact, or by misapprehending the law with respect to underlying issues in litigation." *Scott*, 733 F.3d at 112 (citing *Quince Orchard Valley Citizens Ass'n*, *Inc. v. Hodel*, 872 F.2d 75, 78 (4th Cir. 1989)).

# I.

## THE SUMMARY JUDGMENT SHOULD BE REVERSED BECAUSE AT MINIMUM DISPUTED ISSUES OF MATERIAL FACT EXIST REGARDING WYNN'S LIABILITY FOR THE FALSE STATEMENTS MADE BY ITS CHOSEN DEALER.

**A.    Wynn's arrangement with its dealers like Armstrong Auto raises an issue of material fact about whether Armstrong Auto made false statements as an agent for Wynn's.**

**1.    Under Virginia law, agency is determined by the facts and circumstances of each case, not by what the parties call their relationship.**

Virginia law recognizes that when an entity allows another to present and explain its contract to a consumer, that entity is liable for the misrepresentations of the person it used to explain its contract.

> With regard to the second main issue, Nationwide argues that it is an innocent principal and cannot be held responsible for Huffman's misrepresentation. We cannot accept this contention. Nationwide argues that only by its direct participation can it be held liable for its agents' conduct. We have long adhered to the rule that "a principal is bound by representations of his agent, made either in the scope of his employment or in furtherance of the object for which he is employed." *Cerriglio v. Pettit*, 113 Va. at 542, 75 S.E. at 307. In *Jefferson Stand. Ins. Co.*, we explained that the rule is one of public policy and convenience; we said that

>> "in no other way could there be any safety to third persons in their dealings, either directly with the principal, or indirectly with him through instrumentality of agents. In every such case, the principal holds out his agent, as competent, and fit to be trusted; and thereby, in effect, he warrants his fidelity and good conduct in all matters within the scope of the agency."

22

> 181 Va. at 834, 27 S.E.2d at 202 (quoting J. Story, Commentaries on the Law of Agency § 452 (9th ed. 1882)). We reaffirmed our view on this subject in *Dudley*.
>
> In this case, Huffman was held out as Nationwide's agent. He was so listed in the local telephone directory. He used Nationwide's letterhead. He was sent to Patterson's business by Nationwide to explain the new policy to Patterson. He was acting within the scope of his employment in representing to Patterson the extent of the coverage provided by the policy.
>
> For all the foregoing reasons, the judgment appealed from will be affirmed.

*Nationwide Ins. Co. v. Patterson*, 229 Va. 627, 632, 331 S.E.2d 490, 493 (1985).

Under the law of agency "[a]n agent represents his principal in an act intended, or calculated to result in the creation of a voluntary primary obligation or undertaking." *Virginia Iron*, *Coal & Coke Co. v. Odle's Adm'r*, 128 Va. 280, 287, 105 S.E. 107, 109 (1920) (quoting Huffcut on Agency (2d Ed.) § 4)(*see also Dimos v. Stowe*, 193 Va. 831, 838-39, 71 S.E.2d 186, 190-91 (1952). "Agency is a fiduciary relationship resulting from one person's manifestation of consent to another person that the other shall act on his behalf and subject to his control, and the other person's manifestation of consent so to act." *Reistroffer v. Person*, 247 Va. 45, 48, 439 S.E.2d 376, 378 (1994)(reversing trial court's upholding of a demurrer because whether an agency relationship existed was to be resolved by the presentation of facts). "The power of control is an important factor in determining whether an agency relationship exists." *Id.* Direct evidence of the right to control another is not indispensable to a proof of agency because agency shall be

determined from the facts and circumstances of each case. *See Acordia of Virginia v. Genito Glenn*, *LP*, 263 Va. 377, 386, 560 S.E.2d 246, 249-50, (2002). The question is not whether the principal actually exercised the control but whether the parties agreed the principal had the right to control. *See McDonald v. Hampton Training School for Nurses*, 254 Va. 79, 81, 486 S.E.2d 299, 301 (1997)(citing *Smith v. Grenadier*, 203 Va. 740, 746, 127 S.E.2d 107, 111-12 (1962)).

"It is well settled that one may be the agent of another as to third persons, although the relation of principal and agent does not exist. The contract between the parties is not alone to determine the question of agency when the rights of third persons are involved, but that is to be considered along with other facts and circumstances given in evidence which bear upon the question of agency." *Bloxom v. Rose*, 151 Va. 590, 598, 144 S.E. 642, 643 (1928) (citing *McIntyre v. Smyth*, 108 Va. 736, 62 S.E. 930 (1908)). "When an agreement, considered as a whole, establishes an agency relationship, the parties cannot effectively disclaim it by formal 'consent'. '(T)he relationship of the parties does not depend upon what the parties themselves call it, but rather in law what it actually is.'" *Murphy v. Holiday Inns, Inc*., 216 Va. 490, 492-93, 219 S.E.2d 874, 876 (1975)(citing *Chandler v. Kelley*, 149 Va. 221, 231, 141 S.E. 389, 391-92 (1928) and *Thaxton v. Commonwealth*, 211 Va. 38, 43, 175 S.E.2d 264, 268 (1970)). An agent possesses implied powers to perform the tasks that are ordinarily incidental to the conduct

authorized by the principal. *See DHA*, *Inc. v. Leydig*, 231 Va. 138, 140, 340 S.E.2d 831, 832 (1986).

"Unless the existence of an agency relationship depends upon unambiguous written documents, or undisputed facts, the question of agency *vel non* is one of fact for the jury. *See Turner v. Buick Corp*., 201 Va. 693, 698, 112 S.E.2d 911, 915 (1960); *Bloxom v. Rose*, 151 Va. 590, 595-96, 144 S.E. 642, 643 (1928).  Agency may be inferred from the conduct of the parties and from the surrounding facts and circumstances. *Royal Indemnity Co. v. Hook*, 155 Va. 956, 157 S.E. 414 (1931)." *Drake v. Livesay*, 231 Va. 117, 121, 341 S.E.2d 186, 189 (1986); *see also Hadeed v. Medic-24*, *Ltd.*, 237 Va. 277, 288, 377 S.E.2d 589, 594 (1989)(upholding denial of Motion to Strike because evidence raised factual issue for jury regarding agency).  Agency is only a question of law if no conflict exists between the facts. *Schwartz v. Brownlee*, 253 Va. 159, 162-63, 482 S.E.2d 827, 829 (1997)(stating a "conflict in the positions taken by the parties" is not a conflict in the facts).

> **2.    A reasonable jury could find that Armstrong Auto was Wynn's agent to select, negotiate and explain the Wynn's service contract because of the express authority in the Dealer Agreement and Wynn's expectations of its dealers.**

The Dealer Agreement between Wynn's and Armstrong Auto proves that Wynn's consented that Armstrong Auto would offer Wynn's coverage to potential customers. (J.A. at 50)  It also provided that Wynn's had the power to control Armstrong Auto's duties in that regard.  Armstrong Auto agreed to offer customers

Wynn's contracts "in compliance with Administrator's instructions and procedures."  Wynn's not only could determine those procedures, but it set the service contract's terms which Armstrong Auto could not vary.  As explained in *Bloxom* above, the bare statement in the contract between Armstrong and Wynn's regarding not establishing an agency relationship does not control whether, as to third persons like Bradley, Armstrong Auto can be Wynn's agent.  The facts and circumstances have to be viewed as a whole.

In addition to the Dealer Agreement authorization, Wynn's corporate designee also testified that Armstrong Auto was Wynn's agent for the purpose of selling the service contracts.  Most importantly, for all its dealers like Armstrong Auto, Wynn's expects and directs customers to ask the dealer which Wynn's service contract is right for them. (J.A. at 76).  The dealer is the entity who solicits contracts on Wynn's behalf, and is the conduit by which Wynn's provides the consumer information.  For service contracts on used cars, Wynn's mandates that the service contract sale occur on the same day as the car sale.  Thus, the facts and circumstances show that Wynn's uses dealers like Armstrong Auto to negotiate a service contract sale on Wynn's behalf as part of a negotiation of a used car sale.

More than just using dealers to offer the service contracts for it, Wynn's also uses its dealers to explain Wynn's actions.  The August 28, 2012 letter proves that

Wynn's standard practice is to refer customers to the dealers with questions about Wynn's actions. (J.A. at 30).

These facts would allow a jury to infer that Wynn's uses dealers like Armstrong Auto as its agent to select, present and explain its service contract. The fact that Wynn's uses its dealers as the only means by which its customers negotiate a service contract allows for the inference that Armstrong Auto made its false statements as Wynn's agent. Making such statements falls under the implied powers of an agent offering and explaining the service contract. As in *Nationwide v. Patterson*, the crucial fact is that Armstrong Auto was authorized to speak about such matters. The falsity of Armstrong Auto's statement does not remove it from the agency relationship simply because Wynn's did not authorize it to make a mistake. *See Jefferson Standard Life Ins. Co v. Hedrick*, 181 Va. 824, 834, 27 S.E.2d 198, 202 (1943)(collecting and summarizing cases holding principal liable for actions of agent even if principal forbade or disapproved of the actions).

Therefore, summary judgment that no agency relationship existed was improperly entered. Because the undisputed facts show that Armstrong Auto was the only person who could negotiate the contract with Bradley for Wynn's and was expected to answer the questions about the service contract, the District Court could have found as a matter of law that the undisputed facts established Armstrong Auto as Wynn's agent. At minimum, the evidence allows a jury to

27

infer that Armstrong Auto was Wynn's agent for the purpose of selecting,

negotiating, or explaining its service contract.

### 3. Because evidence existed that Armstrong Auto was Wynn's agent, Armstrong Auto's false statements can show a violation of the VCPA.

As remedial legislation, the VCPA should be applied to suppress unfair

practices committed by suppliers on the consuming public. As expressly stated,

the VCPA "is remedial legislation to promote the fair and ethical standards of

dealings between suppliers and the consuming public." Va. Code § 59.1-197. The

statutes passed by the General Assembly must be read so as to "promote the ability

of the enactment to remedy the mischief at which it is directed." *Natrella v. Board*

*of Zoning Appeals*, 231 Va. 451, 461, 345 S.E.2d 295, 301 (1986) (quoting *Jones*

*v. Conwell*, 227 Va. 176, 181, 314 S.E.2d 61, 64 (1984)).   "Further, it is a

universal rule that statutes such as those under consideration here which are

remedial in nature, are to be 'construed liberally, so as to suppress the mischief and

advance the remedy,' as the legislature intended." *Board of Sup. v. King Land*

*Corp.*, 238 Va. 97, 103, 380 S.E.2d 895, 898-99 (1989)(quoting *Shumate's Case*,

56 Va. (15 Gratt.) 653, 661 (1860)); *see also Bowman v. Commonwealth*, 201 Va.

656, 661, 112 S.E.2d 887, 891 (1960); 17 Michie's Jurisprudence, Statutes, § 72.

Accordingly, even a technical wrong is a violation. *Valley Acceptance Corp. v.*

*Glasby*, 230 Va. 422, 433, 337 S.E.2d 291, 297 (1985).

The following definitions are provided in § 59.1-198 of the VCPA:

"Consumer transaction" means: 1. The advertisement, sale, lease, license or offering for sale, lease or license, of goods or services to be used primarily for personal, family or household purposes;
. . .
"Supplier" means a seller, lessor or licensor who advertises, solicits or engages in consumer transactions, or a manufacturer, distributor or licensor who advertises and sells, leases or licenses goods or services to be resold, leased or sublicensed by other persons in consumer transactions.

Among other practices, the VCPA prohibits suppliers from engaging in the

following conduct:

     5. Misrepresenting that goods or services have certain quantities, characteristics, ingredients, uses, or benefits;
     . . .
     8. Advertising goods or services with intent not to sell them as advertised, or with intent not to sell at the price or upon the terms advertised.
In any action brought under this subdivision, the refusal by any person, or any employee, agent, or servant thereof, to sell any goods or services advertised or offered for sale at the price or upon the terms advertised or offered, shall be prima facie evidence of a violation of this subdivision. This paragraph shall not apply when it is clearly and conspicuously stated in the advertisement or offer by which such goods or services are advertised or offered for sale, that the supplier or offeror has a limited quantity or amount of such goods or services for sale, and the supplier or offeror at the time of such advertisement or offer did in fact have or reasonably expected to have at least such quantity or amount for sale;
     . . .
     14. Using any other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction;

The VCPA claim is different than a claim for fraud. The Virginia Supreme Court has ruled that a VCPA claim involves different elements of proof than a fraud claim even when on the same facts and involving the same misrepresentation. *Wilkins v. Peninsula Motor Cars*, *Inc.*, 266 Va. 558, 587 S.E.2d 581, 584, (2003) (stating that "this case involves causes of action with different elements of proof and potentially duplicative damage awards."). Thus, the VCPA can be violated without proving all the elements of fraud. *See Surprenant v. Board For Contractors*, 30 Va. App. 165, 171-72, 516 S.E.2d 220, 223 (1999)(finding a violation of the VCPA even though finding no common law fraud).

> Proof of fraud in a consumer transaction is alone sufficient to establish a violation of the VCPA, but the legislative purpose underlying the VCPA was, in large part, to expand the remedies afforded to consumers and to relax the restrictions imposed upon them by the common law. That remedial purpose would be nullified by an interpretation of the VCPA that construed it as merely declarative of the common law.

*Owens v. DRS Automotive*, - Va. - , 764 S.E.2d 256, 260 (2014). For instance, under 59.1-200(A)(8), the prima facie violation is not selling on the terms offered, and the consumer's loss is not receiving what was offered.

The undisputed facts show that Wynn's and Armstrong were suppliers in a consumer transaction with Bradley. Whether as a seller or as a distributor who offered its service contract to be sold or resold, Wynn's meets the definition of supplier. Bradley wanted a car for her own use and thus the transaction was a

consumer transaction.  Therefore, the transaction was regulated by the Virginia

Consumer Protection Act, Va. Code Ann. § 59.1-196, *et seq*.

Wynn's, through its agent, violated Va. Code Ann. § 59.1-200(A)(5), (8) and

(14) by misrepresenting the benefits of the Wynn's contract to Bradley, by offering

the coverage when it would not be honored and was not honored, and by

misrepresenting that coverage was provided.  The undisputed facts are that

Armstrong made these misrepresentations at the time of sale.  The Buyer's Order

and the Retail Installment Sale Contract both show that the coverage was offered

and accepted, and that its charge plus tax was included in the total sale price.

Bradley further testified that after she received Wynn's August 28 letter,

Armstrong Auto repeated these misrepresentations and convinced her to ignore the

unsigned, computer generated letter.  No dispute exists that the car was ineligible

for this coverage.

Wynn's cannot frustrate the purposes of the VCPA by using Armstrong

Auto to solicit members of the public to contract with Wynn's while at the same

time avoiding responsibility for Armstrong Auto's representations when doing so.

Especially when the August 28 letter instructed Bradley to contact Armstrong Auto

with any questions, Wynn's cannot avoid the consequences of its choice to choose

Armstrong to speak for it.  Bradley relied on each of these representations to her

loss.  First, even before she was presented with the service contract itself, she had

31

contractually agreed to buy a car in reliance on the promise of Wynn's coverage. She then stayed in the transaction based on the false statements about the August 28 letter, and she ended up owing more for that car then if a Wynn's contract had never been discussed. Also, she never received a rebate of the taxes she paid for the Wynn's contract.

Because of the evidence that Wynn's agent to select, negotiate, and explain the service contract violated the VCPA, summary judgment should not have been entered against Bradley's VCPA claim.

**B.    Wynn's authorizing Armstrong Auto to select, negotiate and explain its service contract raises an issue of fact whether Armstrong Auto's false statements were made with Wynn's apparent authority.**

**1.    Under the doctrine of apparent authority, a third party's reasonable belief that an agent is vested with authority can establish a principal's liability.**

The Virginia Supreme Court has explained how a principal can be bound by an agent's actions even beyond the specific authority granted to the agent. Apparent authority "concerns the '[a]uthority a third party reasonably believes an agent has, based on the third party's dealings with the principal, even though the principal did not confer or intend to confer the authority.'" *Sanchez v. Medicorp Health System*, 270 Va. 299, 303, 618 S.E.2d 331, 333 (2005)(quoting Black's Law Dictionary 142 (8th ed. 2004)). The Court went on to explain

32

In *Bardach Iron & Steel Co. v. Charleston Port Terminals*, 143
Va. 656, 673, 129 S.E. 687, 692 (1925), we stated:
[A]s between the principal and agent and third persons, the mutual
rights and liabilities are governed by the apparent scope of the agent's
authority, which is that authority which the principal has held the
agent out as possessing, or which he has permitted the agent to
represent that he possesses, in which event the principal is estopped to
deny that the agent possessed the authority which he exercised.
*Accord Wright v. Shortridge*, 194 Va. 346, 352-53, 73 S.E.2d 360,
364 (1952). The definition of the term "apparent authority"
presupposes the existence of an agency relationship and concerns the
authority of the agent.

*Sanchez*, 270 Va. at 303-04, 618 S.E.2d at 333, (2005).

"True it is that, 'A corporation is subject, to the same extent as a natural

person, to the general principle that one who holds out another, or allows him to

appear as having authority to act, as his agent with respect to his business

generally, or with respect to a particular matter, cannot, as against persons dealing

with him in good faith, deny that his apparent authority is real.'" *Mosell Realty

Corp. v. Schofield*, 183 Va. 782, 791, 33 S.E.2d 774, 777 (1945)(*quoting* Fletcher

Cyclopedia Corporations, Perm. Ed, Vol. 2, § 449, p. 257). "[T]he principal is

bound, under the doctrine of apparent authority, to the extent he holds out another

as having the authority to act for him . . . even if the agent commits a fraud." *Kern

v. J.L. Barksdale Furniture Corp*., 299 S.E.2d 365, 367, 224 Va. 682, 685

(1983)(citing *Southern Amuse't Co. v. Ferrell*, 125 Va. 429, 433, 99 S.E. 716, 717

(1919); *Dudley v. Estate Life Ins. Co*., 220 Va. 343, 347-51, 257 S.E.2d 871, 874-

76 (1979)).  "An act is within the apparent scope of an agent's authority if, in view

33

of the character of his actual and known duties, an ordinarily prudent person, having a reasonable knowledge of the usages of the business in which the agent is engaged, would be justified in believing that he is authorized to perform the act in question." *Neff Trailer Sales*, *Inc. v. Dellinger*, 221 Va. 367, 371, 269 S.E.2d 386, 388 (1980).

When the evidence is conflicting on the scope of authority or when different inferences can be drawn from the evidence, then apparent authority is a jury issue. *See Wright v. Shortridge*, 194 Va. 346, 353, 73 S.E.2d 360, 365 (1952); *see also Neff Trailer Sales*, 221 Va. at 371-72, 269 S.E.2d at 388 (granting new trial because apparent authority was a jury issue).

## 2. Armstrong Auto's false representations were made under Wynn's apparent authority because Wynn's held Armstrong Auto out as the entity with whom Bradley should interact.

The Dealer Agreement proves that Wynn's authorized Armstrong Auto to offer Wynn's service contracts to the public. As explained in Section I, A, the evidence allows at minimum for an inference that Armstrong Auto was Wynn's agent for this purpose. Under that agency, the doctrine of apparent authority can then make Wynn's liable for Armstrong Auto's conduct even if Armstrong Auto acted beyond his specific duties.

For all its dealers like Armstrong Auto, Wynn's expects and directs customers to ask the dealer which Wynn's service contract is right for them. (J.A.

34

at 76). Thus, its business model is for the dealer to hold itself out to the public as knowledgeable about the service contract. Wynn's holds these dealers out as the people who solicit contracts on Wynn's behalf, and as the conduit by which Wynn's has its consumer get information. As mandated by Wynn's, the service contract sale occurs on the same day as the car sale. As its standard practice, Wynn's empowers its dealer to use the service contract to induce a car sale, and it expects the dealer to profit from this process.

Thus, the facts and circumstances show that Wynn's allowed Armstrong Auto to negotiate a service contract sale with Bradley on Wynn's behalf as part of a negotiation of a used car sale. Travis Armstrong told Bradley that he would first have to check a computer system to see whether the car would be eligible for coverage, that he checked, and then he told her that the system confirmed it could be covered. Bradley believed him and agreed to buy the car because of that representation. She then signed the documents to buy the car and paid her downpayment before even being asked to sign the service contract. Bradley thus submitted evidence that she agreed in good faith to buy the car and the service contract based on Armstrong Auto's apparent authority.

As the August 28, 2012 letter proves, Wynn's later instructed Bradley to take any of her questions about that contract to Armstrong Auto. (J.A. at 30). Bradley had questions about the letter and relied on Armstrong Auto's answer that

the letter was simply a computer error.  The letter is not signed and has no Wynn's letterhead, and Bradley believed Travis Armstrong because he was in the business. Because she did exactly what Wynn's told her to do and asked Armstrong Auto her questions, then, as stated in *Mosell Realty Corp. v. Schofield*, Wynn's cannot "deny that his apparent authority is real" to answer those questions.

A jury could also find apparent authority because Wynn's uses dealers to speak for it when it knows those dealers are wrong about the coverage.  In three years over one hundred service contracts were improperly sold by Wynn's dealers on hybrid vehicles. (J.A. at 501).  When a dealer has made a mistake and improperly charged a consumer for such a Wynn's contract, Wynn's standard response is the form letter that sends the consumer back to the errant dealer with any questions.  Wynn's has taken no steps to correct this situation and for the Bradley transaction considers that its system worked perfectly. (J.A. at 406-07). When a company knowingly chooses a misinformed person to explain its actions, that person's explanation is done with apparent authority.

Therefore, summary judgment was improperly entered that no apparent authority existed.  Because the undisputed facts show that Wynn's held Armstrong Auto out as the only person who could negotiate the contract with Bradley for Wynn's and because Armstrong Auto was expected to answer the questions about the service contract, the District Court could have found as a matter of law that the

36

undisputed facts established Armstrong Auto's apparent authority. At minimum, the evidence allows the jury to infer apparent authority because Wynn's allowed Armstrong Auto to make representations about the service contract and Bradley reasonably relied upon them.

### 3. Because evidence existed that Armstrong Auto acted with apparent authority, summary judgment should not have been entered against the VCPA and the Magnuson-Moss claims.

Whether under Armstrong Auto's duties as an agent, or under apparent authority, the VCPA analysis is the same as presented in Section I, A, 3 above. For the reasons set forth there, because Armstrong Auto's representations were made with Wynn's apparent authority, summary judgment should not have been entered against the VCPA claim.

Magnuson-Moss provides a civil action for damages against a service contractor who fails to comply "with any obligation under this title" or "under a service contract." 15 U.S.C. § 2310(d). A service contract is defined as "a contract in writing to perform, over a fixed period of time or for a specified duration, services relating to the maintenance or repair (or both) of a consumer product." 15 U.S.C. § 2301(8). "By passing the Act, Congress sought to 'improve the adequacy of information available to consumers, prevent deception, and improve competition in the marketing' of goods." *Seney v. Rent-A-Center*, 738 F.3d 631, 633 (4th Cir. 2013)(citing 15 U.S.C. § 2302(a)). A Magnuson-Moss claim is

separate from a VCPA claim, and when based on the same damages afford slightly different relief because of the expanded definition of recoverable court expenses under Magnuson-Moss. *See Holmes v. LG Marion Corp.*, 258 Va. 473, 521 S.E.2d 528, 534 (1999).

A Magnuson-Moss claim requires the application of state law to the contract. *See Carlson v. General Motors Corp.*, 883 F.2d 287, 291 (4th Cir. 1989); *Saval v. BL Ltd.*, 710 F.2d 1027, 1033 (4th Cir. 1983); *Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1012, (D.C. Cir. 1986); *MacKenzie v. Chrysler Corp.*, 607 F.2d 1162, 1165 (5th Cir. 1979). Every contract includes "a duty of good faith and fair dealing in its performance and its enforcement." *Hooters of America*, *Inc. v. Phillips*, 173 F.3d 933, 940 (4th Cir. 1999)(citing Restatement (Second) of Contracts § 205 (1981)). *See also Virginia Vermiculite*, *Ltd. v. W.R. Grace & Company- Connecticut*, 156 F.3d 535, 542 (4th Cir. 1998)("although the duty of good faith does not prevent a party from exercising its explicit contractual rights, a party may not exercise contractual discretion in bad faith, even when such discretion is vested solely in that party.") Because it is not a tort, "[t]he breach of the implied duty under the U.C.C. gives rise only to a cause of action for breach of contract." *Charles E. Brauer Co.*, *Inc. v. NationsBank of Virginia*, *N.A.*, 251 Va. 28, 33, 466 S.E.2d 382, 385 (1996).

Because sufficient evidence was introduced that Armstrong Auto's false representations were made with Wynn's apparent authority, summary judgment should not have been entered against the Magnuson-Moss claim. First Bradley was told the car was eligible for Wynn's coverage, and then she received an unsigned and unidentified form letter that stated it was ineligible. In response to her question, she was told the form letter was computer error and that she had coverage, but later, when she needed coverage, found out none existed. Because Wynn's cannot disclaim the apparent authority of the actions of its chosen agent, at minimum the evidence can show a violation of the implied covenant of good faith and fair dealing and that Wynn's violated its duties under the service contract. Furthermore, although it claims the car was never covered by the service contract, neither Wynn's nor Armstrong Auto ever refunded the taxes charged on the service contract. For contracts that are canceled, the duty to refund the taxes is a contractual duty and supports a Magnuson-Moss claim.

**C.     Under agency by estoppel, Wynn's written direction that Bradley contact Armstrong Auto with her questions about Wynn's actions raises a genuine issue of material fact about whether Wynn's can be held liable for Armstrong Auto's false statement.**

> **1.     Even in the absence of an actual agency, a principal can be held liable for another's statements under agency by estoppel.**

Although apparent authority applies when some agency exists, actual agency is not a necessary condition for finding a principal liable for acts of another.

> In contrast, the term "apparent or ostensible agency" (sometimes also
> called "agency by estoppel," *see Chandler v. Kelley*, 149 Va. 221,
> 232, 141 S.E. 389, 392 (1928)), means "[a]n agency created by
> operation of law and established by a principal's actions that would
> reasonably lead a third person to conclude that an agency exists."
> Black's Law Dictionary 67 (8th ed.2004); *see also Title Ins. Co. of
> Richmond*, *Inc. v. Howell*, 158 Va. 713, 724, 164 S.E. 387, 391 (1932)
> ("[o]ne who permits another to hold himself out as agent and appears
> to acquiesce in that assumption of authority is bound thereby");
> *Hardin v. Alexandria Ins. Co.*, 90 Va. (15 Hans.) 413, 416-17, 90 Va.
> 413, 18 S.E. 911, 911-13 (1894) (insurance company held individual
> out to the public at large as the company's agent through whom all
> transactions with the company had to pass); *Gallagher v. Washington
> County Sav.*, *Loan & Bldg. Co.*, 125 W.Va. 791, 25 S.E.2d 914, 919
> (1943) (quoting Restatement (First) of Agency § 8, cmt. a: "[a]n
> apparent agent is a person who, whether or not authorized, reasonably
> appears to third persons, because of the manifestations of another, to
> be authorized to act as agent for such other").

*Sanchez v. Medicorp Health System*, 270 Va. 299, 304, 618 S.E.2d 331, 333,

(2005).  Such agency can be found when a company holds another out as the

"intermediate of the company, by and through whom all transactions with the

company by parties seeking or having insurance must pass, subject to approval."

*Hardin v. Alexandria Ins. Co.*, 90 Va. 413, 417, 18 S.E. 911, 913 (1894) (regarding

property insurance but equally applicable to a service contract).

"Apparent or ostensible agency is sometimes described as an exception to

the general principle that an employer is not vicariously liable for the negligence of

an independent contractor." *Sanchez*, 270 Va. at 305, 618 S.E.2d at 334.  Under the

Restatement (Second) of Agency 267, for agency by estoppel "a showing of

40

justifiable reliance by the injured person upon the representations of the principal

is required." *Id.* 270 Va. at 305, 618 S.E.2d at 334.

> **2.    Because Bradley justifiably relied on the letter from Wynn's and took her questions to Armstrong Auto, under agency by estoppel Wynn's is liable for Armstrong Auto's answers**.

The facts are undisputed that Wynn's sent the August 28 letter and

instructed Bradley to take her questions to Armstrong Auto.  Bradley's testimony

is that she followed that instruction.  Armstrong Auto then provided a plausible

reason for her to disregard the unsigned and unidentified letter, and instead

continued the prior representation that she had the Wynn's coverage for which she

had been charged.  Even if Armstrong Auto was never an actual agent of Wynn's,

because Bradley justifiably relied on Wynn's instruction, a jury could find agency

by estoppel.

Whether under Armstrong Auto's duties as an agent, or because of agency

by estoppel, the VCPA analysis is the same as presented in Section I, A, 3 above.

The VCPA is a remedial statute regarding consumer transactions, which by their

nature are based in contract, and therefore agency by estoppel applies to VCPA

claims to the same extent as contract claims.  For the reasons in Section I, A, 3,

because Armstrong Auto's representations were made by Wynn's apparent agent,

summary judgment should not have been entered against the VCPA claim.

Similarly, whether under actual agency or under agency by estoppel, the

Magnuson-Moss analysis is the same as presented in Section I, B, 3 above. For the

reasons set forth there, because Armstrong Auto's representations were made

under apparent agency, summary judgment should not have been entered against

the Magnuson-Moss claim.

## II.

### BECAUSE THE AMENDED CLAIM WAS NOT BASED ON AGENCY, THE TRIAL COURT ABUSED ITS DISCRETION BY DENYING THE AMENDED VCPA CLAIM

Under Rule 15(a)(3) of the Federal Rules of Civil Procedure, Plaintiff sought

permission to file this amended document. As stated by this Court:

> A plaintiff may amend his complaint one time as a matter of course
> before the defendant files a responsive pleading. Fed.R.Civ.P. 15(a).
> Once the defendant files a responsive pleading, however, the plaintiff
> may amend his complaint only by leave of the court or by written
> consent of the defendant, *id.*, but Rule 15(a) directs that leave to
> amend "shall be freely given when justice so requires." This liberal
> rule gives effect to the federal policy in favor of resolving cases on
> their merits instead of disposing of them on technicalities. *See Conley
> v. Gibson*, 355 U.S. 41, 48, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957) ("The
> Federal Rules reject the approach that pleading is a game of skill in
> which one misstep by counsel may be decisive to the outcome and
> accept the principle that the purpose of pleading is to facilitate a
> proper decision on the merits."); *Ostrzenski v. Seigel*, 177 F.3d 245,
> 252-53 (4th Cir.1999) ("The federal rule policy of deciding cases on
> the basis of the substantive rights involved rather than on
> technicalities requires that [the] plaintiff be given every opportunity to
> cure a formal defect in his pleading." (quoting 5A Charles Allen
> Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1357 (2d
> ed.1990))).

42

> We have interpreted Rule 15(a) to provide that "leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile." *See Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986) (citing *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962)).

*Laber v. Harvey*, 438 F.3d 404, 426-27 (4th Cir. 2006).

As set forth in her Motion to Amend, (J.A. at 222), in September 2014, Bradley learned the information that supports the new claims proffered by Bradley's Amended Answer and Counterclaim. The new fact allegations are Paragraphs 82 through 87 of the proposed pleading. (J.A. at 232). The core allegation is that the dollar amount of the Wynn's service contract was improperly inflated and the true amount was several hundred dollars less. Based on that allegation, a new Fifth Cause of Action under the VCPA was asserted. (J.A. at 236).

The Wynn's contract shows that Bradley was charged $1,580.00. The first paragraph of this Wynn's form contract provides the formula for determining the true service contract price. It states that "[t]he Selling Dealer agrees that all sums paid by You under the terms of this Contract, excluding a commission earned by the Selling Dealer and an administrative fee earned by US, shall be submitted on Your behalf to National Casualty Company for the purpose of insuring the

payment of Your claims under this Contract." In September, Bradley learned the

last of the numbers to complete this formula:

| | |
|---|---|
| Armstrong Auto's Commission | $ 385.00 |
| + Wynn's Administrative Fee | $ 80.00 |
| + Money for Insurance Company | $ 655.00 |
| True Cost of Contract | $1,120.00 |

The Administrative Fee and the Insurance money are both confirmed in the

declaration by the President of Wynn's, (J.A. at 184, Para. 13.), and in September

Bradley learned that Wynn's knew the dealer's commission was $385.00, and that

CAC took an undisclosed and improper fee. Because $1,120.00 is $460.00 less

than $1,580.00, Bradley's amended claim is easily proven from the evidence

already in the record.

Paragraph 86 of the proposed Amended Counterclaim alleges that this

misrepresentation was "authorized by Wynn's as part of its normal business

practice for dealers like Armstrong." The evidence is that Wynn's provided the

retail amount to Armstrong Auto. The new Fifth Cause of Action alleges a VCPA

claim directly against Wynn's because it represented that its contract would be

calculated under a certain formula but did not do so, because it charged an inflated

amount for the contract, and because it misrepresented the true dollar cost. (J.A. at

236, Paragraph 118-119).

The ends of justice are served by allowing the allegations of this newly

discovered fact to be added to the case. If she is not allowed to present these

claims as part of this case, then they will be barred by the res judicata effect of this case's final order. Functionally, Bradley's request was nothing more than at trial she be allowed to recover based on the evidence presented at trial, or that these claims be preserved so she can raise them later. To ensure that no prejudice would be suffered by Wynn's, Bradley agreed that if Wynn's sought a deposition about these new claim, Bradley would not resist any deposition on this area. Bradley also agreed to supplement her Interrogatory Answers to Wynn's contention Interrogatories about the basis of her fraud and VCPA claims. Finally, Bradley did not oppose the filing of a new Motion for Summary Judgment by Wynn's if Wynn's believed that this new theory should be the subject of a summary judgment process.

The District Court misinterpreted the underlying facts of the amended claim, and mistakenly ruled that it was dependent on proving agency. On the contrary, the claim is based directly on Wynn's form contract terms and Wynn's own actions. Furthermore, a Wynn's retail rate sheet was provided to Armstrong Auto that set the inflated price, and Wynn's knew this price exceeded the contractual formula. Therefore, the District Court abused its discretion by "resting its decision on a clearly erroneous finding of a material fact." *See Scott v. Family Dollar Stores*, *Inc*., 733 F.3d 105, 112 (4th Cir. 2013). Additionally, if somehow proof of

45

Armstrong Auto's agency was necessary for the amended claims, then for the reasons presented in Section I above, sufficient evidence of agency was presented.

Therefore, the District Court's denial of the leave to amend should be set aside.  The District Court should be ordered to decide whether to allow this new theory of relief under the VCPA to go forward as part of this case, or whether it should be raised separately.

## CONCLUSION

Because Bradley submitted evidence from which a jury could find that Armstrong Auto's misrepresentations were made as Wynn's actual agent, under Wynn's apparent authority, or as an agent by estoppel, this Court should reverse the District Court's grant of summary judgment of the VCPA and Magnuson-Moss claims.  Additionally, the District Court's denial of the Motion to Amend should be reversed and the case returned to the District Court for further proceedings on that motion.  On remand the District Court should then also decide the pending discovery and sanction motions that it dismissed as moot.

## REQUEST FOR ORAL ARGUMENT

Plaintiff requests an oral argument regarding her appeal.

Respectfully submitted,

Penny L. Bradley

By Counsel

/s/ Thomas D. Domonoske
Thomas D. Domonoske VSB #35434
461 Lee Avenue
Harrisonburg, Virginia 22802
(540)-442-7706
tomdomonoske@earthlink.net

/s/ Timothy E. Cupp
Timothy E. Cupp
Cupp & Cupp, PC
1951 Evelyn Byrd Avenue, Suite D
Harrisonburg, Virginia  22803
(540) 432-9988

## CERTIFICATE OF COMPLIANCE

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

    [ X ] this brief contains [*11,183*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

    [    ] this brief uses a monospaced typeface and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    [ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 2007*] in [*14pt Times New Roman*]; *or*

    [    ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

Dated: January 20, 2015            /s/ Thomas D. Domonoske
                                   *Counsel for Appellant*

                                   /s/ Timothy E. Cupp
                                   *Counsel for Appellant*

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 20th day of January, 2015 I caused this Brief of Appellant and Joint Appendix to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

> John H. Carstens
> Virginia M. Sadler
> JORDAN COYNE LLP
> 10509 Judicial Drive, Suite 200
> (703) 246-0900
>
> *Counsel for Appellee*

I further certify that on this 20th day of January, 2015, I caused the required copies of the Brief of Appellant and Joint Appendix to be hand filed with the Clerk of the Court and a copy of the Sealed Volume of the Joint Appendix to be served, via UPS Ground Transportation, upon counsel for the Appellee, at the above address.

/s/ Thomas D. Domonoske
*Counsel for Appellant*

/s/ Timothy E. Cupp
*Counsel for Appellant*