Case No. 14-2334

_____

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

WYNN'S EXTENDED CARE, INC.

*Plaintiff - Appellee,*

v.

PENNY L. BRADLEY,

*Defendant - Appellant.*

_____

**RESPONSE BRIEF OF APPELLEE**
_____

Virginia M. Sadler, VSB No. 48736
JORDAN COYNE LLP
10509 Judicial Drive, Suite 200
Fairfax, Virginia 22030
(703) 246-0900 (Telephone)
(703) 591-3673 (Facsimile)
v.sadler@jocs-law.com

*Counsel for Plaintiff – Appellee Wynn's Extended Care, Inc.*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __14-2334__    Caption: Wynn's Extended Care, Inc. v. Penny Bradley

Pursuant to FRAP 26.1 and Local Rule 26.1,

Wynn's Extended Care, Inc.
(name of party/amicus)

who is _____ Appellee _____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?  ☑ YES ☐ NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:
      Appellee is a subsidiary of Phoenix American Holdings, Inc.

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO
      If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?  ☐ YES ☑ NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)  ☐ YES ☑ NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☐ YES ☑ NO
    If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/ Virginia M. Sadler _____     Date: ___December 11, 2014___

Counsel for: Wynn's Extended Care, Inc. _____

## CERTIFICATE OF SERVICE
****************************

I certify that on _December 11, 2014_ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Timothy E. Cupp, Esquire
Shelley Cupp Schulte, P.C.
1951-D Evelyn Byrd Avenue
P.O. Box 589
Harrisonburg, Virginia 22803

Thomas D. Domonoske, Esquire
461 Lee Avenue
Harrisonburg, Virginia 22802

/s/ Virginia M. Sadler _____          ___December 11, 2014___
        (signature)                                      (date)

- 2 -

# **TABLE OF CONTENTS**

**Page**

CORPORATE DISCLOSURE STATEMENT

TABLE OF AUTHORITIES ................................................................... i

I.    STATEMENT OF THE CASE  ........................................................ 1

II.   STATEMENT OF FACTS ................................................................ 3

    A.    Wynn's Relationship with Armstrong Auto ............................. 3

    B.    The Bradley Transaction ..................................................... 7

III.  SUMMARY OF ARGUMENT ....................................................... 12

IV.   ARGUMENT.............................................................................. 17

    A.    Summary Judgment.............................................................. 17

        1.    Standard of Review........................................................ 17

        2.    The District Court Properly Granted Summary
            Judgment in Favor of Wynn's on All Counts of the
            Counterclaim Based On the Absence of an Agency
            Relationship Between Wynn's and Armstrong Auto .... 19

            a.    No Actual Agency Relationship
                Exists between Wynn's and Armstrong
                Auto ..................................................... 20

            b.    The Doctrine of Apparent Authority is
                Not Applicable...................................... 31

            c.    Bradley Cannot Prevail Under a Theory
                 of Agency by Estoppel  ........................ 33

        3.    The District Court Properly Granted Summary
            Judgment on the VCPA Claim  ..................................... 37

a.     Armstrong Auto's Conduct Cannot Be Attributed to Wynn's to Support the VCPA Claim........................................................ 37

b.     The Doctrine of Agency by Estoppel Does Not Apply to Tort Claims Under Virginia Law ...................................... 39

c.     Paragraph 8 of Va. Code § 59.1-200.A Is Not Applicable................................. 41

d.     Bradley Cannot Prove Reasonable Reliance ............................................. 42

     i.     It Was Not Reasonable for Bradley to Believe That She Had Entered Into a Binding Contract That Would Provide Coverage for Battery Repairs ...... 44

     ii.     It Was Not Reasonable for Bradley to Disregard the Notice  Clearly Informing Her That the Application Was Rejected................................. 46

e.     Bradley Has No Damages ................................. 47

4.     The District Court Properly Granted Summary Judgment in Favor of Wynn's on Bradley's Claim for Violations of the MMWA ...................................... 48

B.     Motion to Amend ............................................. 51

1.     Bradley Has Failed to Present Any Facts That Support a Finding That the District Court Abused Its Discretion in Rejecting Her Motion to Amend ............................................. 51

2.  Even Assuming *Arguendo* That an Agency
        Relationship Existed, the District Court
        Properly Rejected Bradley's Motion to Amend
        Because It Was Highly Prejudicial to Wynn's
        and Without Merit ................................................. 54

V.  CONCLUSION  ............................................................. 57

VI.  STATEMENT AS TO ORAL ARGUMENT ................................... 59

CERTIFICATE OF COMPLIANCE (FRAP 32(a)(7)(b)(c)) .................... 60

CERTIFICATE OF SERVICE ................................................ 61

# TABLE OF AUTHORITIES

**CASES**                                                    **PAGE**

*Adardour v. American Settlements, Inc.*, 2009 U.S. Dist.
LEXIS 56675 (E.D. Va. July 2, 2009)..............................................42, 43

*Alston v. Crown Auto, Inc.,* 224 F.3d 332 (4th Cir. 2000) ....................47

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986)...........................17

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009)....................................................56

*Bardach Iron & Steel Co. v. Charleston Port Terminals*,
143 Va. 656 (1925) .................................................................................33

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007) .................................56

*Bloxom v. Rose*, 151 Va. 590 (1928) ......................................................28

*Celotex Corp. v. Catrett,* 477 U.S. 317 (1986)..................................17, 18

*Cochran v. Morris*, 73 F.3d 1310 (4th Cir. 1996) ...........................39, 48

*Cortel Va. LLC v. Verizon Va., LLC,* 752 F.3d 364 (4th Cir. 2014) 17, 18

*Craddock v. A & E Moving Storage, Inc.*, 82 Va. Cir. 491
(Norfolk 2011) ........................................................................................40

*Egbuna v. Time-Life Libraries, Inc.,* 153 F.3d 184 (4th Cir. 1998).......18

*Equal Rights Ctr. V. Niles Bolton Assocs.,* 602 F.3d 597
(4th Cir. 2010)....................................................................................54, 55

*Foremost Guaranty Corp. v. Meritor Sav. Bank*, 910 F.2d 118
(4th Cir. 1990)....................................................................................42, 43

*Garofolo v. Donald B. Heslep Assocs., Inc.*, 405 F.3d 194
(4th Cir. 2005)........................................................................................17

*Giordano v. Atria Assisted Living, Va. Beach, LLC*,
429 F. Supp. 2d 732 (E.D. Va. 2006) ................................................ 28, 34

*Hardin v. Alexandria Ins. Co.*, 90 Va. 413 (1894) ................................ 35

*Harris v. Bolin*, 950 F.2d 547 (8th Cir. 1991) ........................................ 52

*Hesse v. Ebbets*, 2007 U.S. Dist. LEXIS 93464
(E.D. Va. Dec. 20, 2007) ................................................................. 20, 21

*Hooters of Am., Inc. v. Phillips,* 173 F.3d 933(4th Cir. 1999) .............. 50

*Ilozor v. Hampton Univ.,* 2007 U.S. Dist. LEXIS 33032
(E.D. Va. May 3, 2007) ........................................................................ 50

*Johnson v. Washington*, 559 F.3d 238 (4th Cir. 2009). .......................... 43

*Jones v. C.H. Robinson Worldwide, Inc.*, 558 F. Supp. 2d 630
(W.D. Va. 2008) ............................................................................... 22, 27

*Kern v. J.L. Barksdale Furniture Corp.*, 224 Va. 682 (1983) ............... 33

*Laber v. Harvey*, 438 F.3d 404 (4th Cir. 2006) ..................................... 54

*Lynn v. Farm Bureau Mut. Auto. Ins. Co.*, 264 F.2d 921
(4th Cir. 1959) ....................................................................................... 33

*McGhee v. United States*, 2014 U.S. Dist. LEXIS 24509
(W.D. Va. Feb. 24, 2014) ...................................................................... 27

*Mosell Realty Corp. v. Schofield*, 183 Va. 782 (1945) .......................... 33

*Murphy v. Holiday Inns, Inc.,* 216 Va. 490 (1975) ............... 21, 26, 27, 39

*Naccash v. Burger*, 223 Va. 406 (1982) .......................................... 20, 29

*Nationwide Ins. Co. v. Patterson*, 229 Va. 627 (1985) ............. 28, 29, 30

*Noble Sec., Inc. v. MIZ Eng'g, Ltd.*, 611 F. Supp. 2d 513
(E.D. Va. 2009) ..................................................................................... 33

ii

*Nolde Bros., Inc. v. Chalkley*, 184 Va. 553 (1945)................................. 33

*Nourison Rug Corp. v. Parvizian,* 535 F.3d 295 (4th Cir. 2008) ........... 52

*Ogunde v. Prison Health Servs.*, 274 Va. 55 (2007) .............................. 20

*Ostolaza-Diaz v. Countrywide Bank, N.A.*, 360 Fed.
Appx. 504 (4th Cir. 2010)............................................................ 42, 43, 45

*Owens v. DRS Auto. Fantomworks, Inc.*, 764 S.E.2d 256
(Va. 2014) ....................................................................................... 42, 47

*Perkins v. U.S.,* 55 F.3d 910 (4th Cir. 1995) .......................................... 56

*Saffold v. Conway & Assoc.*, 66 Va. Cir. 179 (Va. Cir. Ct. 2004) ......... 33

*Saiyed v. Council on American-Islamic Rels. Action Network, Inc.*,
2015 U.S. Dist. LEXIS 10205 (D.D.C. Jan. 29, 2015).......................... 21

*Sanchez v. Medicorp Health Sys.*, 270 Va. 299 (2005) ..20, 31, 33, 39, 40

*Schwartz v. Brownlee*, 253 Va. 159 (1997) ........................................... 19

*Taylor v. Virginia Union Univ.*, 193 F.3d 219 (4th Cir. 1999) ............. 52

*Terril v. Credit Acceptance Corp.*, 2010 U.S. Dist. LEXIS 31269
(W.D. Va. Mar. 30, 2010)....................................................................... 20

*Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645
(4th Cir. 2002)....................................................................................... 18

*U.S. v. Henry,* 673 F.3d 285 (4th Cir. 2012) ......................................... 52

*Virginia Iron, Coal & Coke Co. v. Odle's Adm'r*,
128 Va. 280 (1920) ............................................................................... 20

*Virginia Vermiculite, Ltd. V. W.R. Grace & Co.-Conn.,*
156 F.3d 535(4th Cir. 1998) ................................................................ 50

*Wells Fargo Bank, N.A. v. Old Republic Nat'l Title Ins. Co.,*

2009 U.S. Dist. LEXIS 118655 (E.D. Va. Dec. 17, 2009)...................... 33

*Wells v. Whitaker*, 207 Va. 616 (1966)................................................... 20

*Wiedman v. Exxon Mobil Corp.,* 2015 U.S. App. LEXIS 276
(4th Cir. 2015)...................................................................................... 50

*Wright v. Shortridge*, 194 Va. 346 (1952) .............................................. 33

## State Statutes

*Virginia Code Ann. §38.2-1801(A)*........................................................ 29

*Virginia Code §59.1-200* ........................................................... 38, 41, 42

*Virginia Code §59.1-204* ....................................................................... 47

## Federal Statutes

15 U.S.C. § 2301(8)................................................................................ 49

## Federal Rules

Fed. R. Civ. Proc. 61.............................................................................. 52

Fed. R. Civ. Proc. 9(b)........................................................................... 56

## Other Authorities

*Moore's Federal Practice – Civil § 61.03*.............................................. 52

## I.    <u>STATEMENT OF THE CASE</u>

This appeal arises out of the claims of Defendant-Appellant Penny Bradley ("Bradley") against Wynn's Extended Care, Inc. ("Wynn's") in connection with Bradley's application for a Wynn's Plus Used Vehicle Extended Service Contract ("VSC").  On August 21, 2012, Bradley purchased a used 2007 Honda Civic Hybrid, a hybrid electric vehicle (the "Vehicle") from Armstrong Auto Sales, Inc. ("Armstrong Auto"), a used car dealer in Harrisonburg, Virginia.  In connection with her purchase, Bradley completed a VSC application (the "Application"), which was rejected by Wynn's upon receipt pursuant to the express terms of the Application, due to the ineligibility of the Vehicle for coverage.  Wynn's promptly notified Bradley.  Several months later, the Vehicle suffered mechanical problems and required repairs.  When Bradley oddly sought coverage from Wynn's, Wynn's communicated again that the Application had been rejected and that Wynn's never issued a VSC due to the Vehicle's ineligibility.

Proffering various baseless theories of liability, Bradley asserted that Armstrong Auto was Wynn's agent, and that but for Armstrong Auto's alleged misrepresentations regarding coverage under a VSC, she would not have purchased the Vehicle.  Bradley contends that, as Wynn's agent, Armstrong Auto made various misrepresentations regarding the Application.  Not only do the undisputed facts in the record refute Bradley's agency theories, they also demonstrate that

1

Bradley was in possession of written documents that directly conflicted with the purported oral statements made by Travis Armstrong ("Mr. Armstrong") of Armstrong Auto, belying any claim of reasonable reliance.

Bradley originally filed suit in the U.S. District Court for the Western District of Virginia (the "District Court") against Armstrong Auto, Mr. Armstrong and Credit Acceptance Corporation ("CAC"). The case was styled *Bradley v. Armstrong Auto Sales, Inc., et al.,* Case no. 5:13-cv-00054. Upon a motion to compel arbitration by those defendants, the District Court dismissed the case and Bradley refiled her claims with JAMS Arbitration (the "Arbitration"). Bradley then named Wynn's as a defendant in the Arbitration. Wynn's filed a Complaint to Enjoin Arbitration with the District Court on December 12, 2013. Bradley then dismissed her claims against Wynn's in the Arbitration and filed a counterclaim for fraud/constructive fraud, violations of the Virginia Consumer Protection Act (the "VCPA") and violations of the Magnuson-Moss Warranty Act (the "MMWA") (the "Counterclaim").

The parties engaged in extensive discovery. At the conclusion of discovery, the parties filed cross motions for summary judgment. Wynn's moved for summary judgment on the Counterclaim in its entirety on September 17, 2014 (the "Wynn's MSJ"). On the same day, Bradley moved for partial summary judgment in her favor with regards to the issue of agency as between Wynn's and Armstrong

2

Auto (the "Bradley MPSJ").  Bradley subsequently moved to amend the Counterclaim on October 2, 2014 (the "Motion to Amend"), after both parties had filed their motions for summary judgment.  The District Court heard oral arguments on November 6, 2014 (the "Hearing").

At the Hearing, the Court granted Wynn's MSJ in its entirety, denied the Bradley MPSJ in its entirety, and entered judgment in favor of Wynn's, dismissing the Counterclaim.  The District Court further denied the Motion to Amend.[1] Bradley now appeals the District Court's ruling on the Wynn's MSJ, but only as to the VCPA and the MMWA rulings, and as to the denial of the Motion to Amend.  Although Bradley vigorously pursued her fraud claim before the District Court, she does not appeal the District Court's dismissal of her fraud/constructive fraud claim, nor does she appeal the ruling on the Bradley MPSJ.

## II.    **STATEMENT OF FACTS**

### A.    **Wynn's Relationship with Armstrong Auto**

On April 4, 2012, Armstrong Auto and Wynn's entered into a Dealer Agreement (the "Dealer Agreement").  (J.A. 187.)  Wynn's did not solicit Armstrong Auto to enter into the Dealer Agreement, and no one from Wynn's

---

[1] Other motions pertaining to sanctions and discovery were pending before the District Court.  The District Court ruled that those remaining motions were also denied as moot; Bradley has not appealed those rulings.

3

spoke to anyone at Armstrong Auto regarding the Dealer Agreement. (J.A. 148; 220 ¶ 8.) The Dealer Agreement itself defines the relationship between Wynn's and Armstrong Auto. Specifically, it provides:

> No Agency. Dealer is not an employee or agent of Administrator for any purpose whatsoever, but is an independent contractor. Dealer does not have nor shall it hold itself out as having any right, power or authority to create any contract or obligation, either express or implied, on behalf of, in the name of or binding upon Administrator unless Administrator shall consent thereto in writing.

(J.A. 148 – 49; 187, p. 1, ¶ 1.B(6).) The Dealer Agreement specifically limits Armstrong Auto's authority and states:

> Limitation of Dealer Authority. Dealer shall have no authority to (a) alter, modify, waive, or discharge any terms or conditions of the Program or any Wynn's Service Contract, (b) incur any liability on behalf of Administrator or (c) make representations about coverage not contained in the Wynn's Service Contract.

(J.A. 187, ¶ 1.B(5).)

Thus, Armstrong Auto may in its sole discretion provide to its customers certain materials on VSCs that were originally prepared by Wynn's, but Armstrong Auto does not have the power to bind Wynn's to any VSC; that power exclusively lies with Wynn's. (J.A. 187, ¶¶ 1.A, 1.B(6); 200.) When one of Armstrong Auto's customers wishes to apply for a VSC, an Armstrong Auto employee assists that customer with completing a VSC application, which that customer reviews and

4

signs.  Armstrong Auto then submits that VSC application to CAC, the financing

company, with the applicable vehicle's financing documentation.  (J.A. 219-20, ¶

6.)  The VSC application is then forwarded by CAC electronically to Wynn's for

review and approval.  (J.A. 162- 63, 173; 185, ¶11.)  However, under no

circumstances does Armstrong Auto have, or has it ever had, the authority to

accept a VSC application on behalf of Wynn's or to bind Wynn's to a VSC with an

Armstrong Auto customer.  (J.A. 184, ¶ 4.)  Moreover, the Dealer Agreement does

not provide Armstrong Auto with any authority to sell VSCs directly for Wynn's.

(J.A. 469-470.)

Other than the Dealer Agreement, Wynn's has had no relationship or

interactions with Armstrong Auto.  In fact, the only time that anyone from

Armstrong Auto ever spoke to anyone at Wynn's was when Bradley took the

Vehicle to Armstrong Auto for repairs.  (J.A. 148; 170 – 71.)  Wynn's has

provided no training to Armstrong Auto concerning the marketing or sale of VSCs.

(J.A. 172.)  Mr. Armstrong testified during the corporate deposition of Armstrong

Auto that Armstrong Auto never received the "Dealer Kit" (a collection of

brochures referenced in the Dealer Agreement) from Wynn's or any other entity.

(J.A. 480 – 82.)  Mr. Armstrong further testified that no one instructed him or told

him how to market VSCs.  (J.A. 172.)  Armstrong Auto, indeed, was never even

asked by Wynn's to provide any information to customers other than blank VSC applications. (J.A. 172.)

Notably, Wynn's does not: (i) have any involvement in the day-to-day operations of Armstrong Auto; (ii) have even a semblance of control over any of Armstrong Auto's actions or decision-making; (iii) have the power to hire or fire Armstrong Auto's employees; (iv) determine how Mr. Armstrong or other Armstrong Auto employees are paid; (v) decide the times at which Armstrong Auto is open for business; (vi) own (or lease) the land on which or the building in which Armstrong Auto operates; or (vii) own the furniture or computer equipment used by Armstrong Auto (or lease the same for Armstrong Auto). (J.A. 175; 184-85, ¶¶ 5 – 8; 220, ¶¶ 10 – 12.)

Not only is Wynn's not involved in the day-to-day operations of Armstrong Auto, but Wynn's also does not control the manner in which Armstrong Auto provides VSC applications to its customers. Wynn's merely provides Armstrong Auto with a rate chart ("Rate Chart") containing information on vehicle eligibility for a VSC and the corresponding VSC retail prices. Armstrong Auto decides, in its sole discretion, whether or not to provide a customer with a VSC application. (J.A. 185, ¶ 10; 220, ¶13.) Armstrong Auto is under no obligation to submit a fixed number of VSC applications per month to Wynn's or CAC. (J.A. 185, ¶ 10; 187.) Notably, Mr. Armstrong, testified in his corporate deposition that when a customer

6

does not affirmatively express interest in a vehicle service contract, Armstrong Auto frequently does not offer the customer any application for one, as it is not profitable for Armstrong Auto to sell such coverage on certain vehicles or to certain customers.  (J.A. 150 – 51.)

For each VSC application that Armstrong Auto submits and that is ***accepted by Wynn's*** to form a binding VSC, Armstrong Auto receives a flat fee, which is paid by CAC out of the VSC retail purchase price (the "VSC Price").  (J.A. 150 – 51; 185, ¶¶10-13; 220, ¶9.)  Wynn's makes no payment directly to Armstrong Auto, and never has.  (J.A. 220, ¶ 9).  Armstrong Auto and Wynn's do not make money on any rejected VSC applications.  (J.A. 146; 186, ¶ 16; 270.)

### B.    The Bradley Transaction

On or about August 21, 2012, Bradley purchased the Vehicle from Armstrong Auto.  (J.A. 154 – 58; 161 – 62; 193.)  At the time of her purchase, Bradley expressed an interest in purchasing an optional extended vehicle service contract.  (J.A. 156.)  Mr. Armstrong, the owner and officer of Armstrong Auto, offered to assist Bradley in completing the Application.  (J.A. 163-64.)  Mr. Armstrong believed that the Vehicle was eligible for coverage by Wynn's, even though the Vehicle was a hybrid and he knew that an electric vehicle is not eligible for coverage under a VSC.  (J.A. 153 – 54).  Mr. Armstrong did not realize that a hybrid was an electric vehicle.  (J.A. 153 – 54; 168.)

7

Mr. Armstrong assisted Bradley with the Application and Bradley signed it. (J.A. 160; 200.)   The face of the Application indicates in unambiguous language that the document is ***only*** an application and that it is subject to verification and may be rejected by the "Administrator" (*i.e.*, Wynn's).   Specifically, the front page of the document states:

> This document is an Application for a service contract.  If this application is accepted by the administrator, then it will become your contract.

(J.A. 200.)  The signature block of the Application further provides:

> I have agreed to and acknowledge . . . the coverage provided, . . . the exclusions of coverage, the cancellation provisions of this contract including the "<u>Other Important Contract Provisions/Limitations</u>" exceptions section, and have read and understood said provisions.  I understand that the above information may be subject to verification and that this Application ***may be rejected*** if any of the above information is incorrect or ***if the above Vehicle is not eligible for the term or coverage written as determined by the Administrator in its sole discretion.***

(J.A. 200) (emphasis added.)  Bradley's signature appears directly beneath the above text on the Application.  (J.A. 200.)  The Application defines the term "Contract" as "this Application once it is accepted by Administrator [i.e. Wynn's] (if at all)."  (J.A. 200.)  The Application further defines the terms "Administrator" and "Selling Dealer" separately.  "Administrator" is defined as Wynn's.  The Application defines "Selling Dealer" as the "automobile dealer identified on the first page of this Contract."  (J.A. 200.)  The exclusions section, titled "Exclusions

8

– What this Contract Does Not Cover," provides that there is no coverage for

"Other normal maintenance services and parts, including, without limitation, . . .

**batteries** . . . ." (J.A. 202, ¶ 22.) (emphasis added).

While at Armstrong Auto, Bradley had the opportunity to review the

Application before she signed it. (J.A. 176.) However, Bradley declined to read

the Application because she believed that it would take too long. In her own

words, Bradley stated: "there was a huge amount of papers. I would have probably

sat there for a long time. . . ." (J.A. 127.) At no point did Mr. Armstrong prevent

Bradley from reading the Application, and Bradley did not ask Mr. Armstrong if

she could have time to review the Application. (J.A. 132, 176). Despite taking a

copy of the Application home with her, Bradley did not look at it until she began

experiencing problems with the Vehicle. (J.A. 134.)

When Bradley elected to apply for a VSC, the VSC Price corresponding to

the Vehicle of $1,580.00 was included in her "Buyer's Order" and in the Retail

Installment Sales Contract (the "Financing Contract") with Armstrong Auto

(assigned to CAC by notice of assignment) as an Optional Service Contract. (J.A.

196.) The Financing Contract specifically notes in the itemization on the first page

that any extended warranty or vehicle service coverage is optional (J.A. 195.) The

second page of the Financing Contract includes an acknowledgment which Bradley

initialed. (J.A. 196.) The acknowledgment states:

**OPTIONAL EXTENDED WARRANTY OR SERVICE CONTRACT:** Although you are not required to purchase an optional extended warranty or service contract as a condition of purchasing this Vehicle on credit, by initialing below You are indicating that You voluntarily elect to buy an optional extended warranty or contract covering the repair of certain major mechanical breakdowns of the Vehicle and related expenses. . . .

After Bradley concluded her transaction for the purchase of the Vehicle on August 21, 2012, Armstrong Auto forwarded the various deal documents to CAC, and then CAC forwarded a total of $735.00 to Wynn's out of the VSC Price.   (J.A. 185, ¶ 13.)  That amount included Wynn's $80.00 administrative fee and $655.00 to be held in reserve for claims and state premium tax payments, in the event that Wynn's chose to accept the Application and issue a VSC for the Vehicle.  (J.A. 185, ¶¶12 – 13; 568.)  CAC also forwarded the Application to Wynn's.  (J.A. 185, ¶ 11.)  Upon receipt of the Application on August 28, 2012 (eight days after Bradley purchased the Vehicle), Wynn's electronic VIN decoder system immediately identified that the Vehicle was ineligible for a VSC because it was a hybrid electric vehicle.  (J.A. 185, ¶ 14.)  A hybrid electric vehicle is not eligible for coverage under a VSC, pursuant to the express language of the Dealer Agreement and Rate Chart.   (J.A. 187 – 89; 567.)   On that same day, Wynn's sent written notice directly to Bradley that it had voided the Application due to the Vehicle's ineligibility, and that therefore it did not issue a VSC (the "Notice"). (J.A. 207.)

10

As per the "Refunds and Charges" section of the Application, and in accordance with standard practice, Wynn's issued a refund to CAC (the lienholder of record) for the full $735.00 that it had received out of the VSC Price (the "Refund"). (J.A. 186, ¶15; 203, 218.) The Refund was reflected in a batch payment record from CAC to Wynn's dated October 29, 2012. (J.A. 186, ¶ 15; 569.) Wynn's neither earned nor retained any monies in connection with the Application. (J.A. 186, ¶ 16.) CAC also credited Bradley's loan account for the rejection of the Application. On August 31, 2012, her account was credited $2,713.68, with a description stating "warranty cancellation." (J.A. 374.)

Bradley signed for the Notice on September 8, 2012. (J.A. 136 – 37; 207 – 08.) The Notice suggested that Bradley contact Armstrong Auto with any questions regarding the rejection of the Application, as Armstrong Auto was in the best position to provide information and assistance related to Bradley's purchase of the Vehicle. (J.A. 185, ¶14; 207.) In her deposition, Bradley claimed that she did not know that Wynn's sent her the Notice. (J.A. 134-35, 138.) Bradley did not call the telephone number listed on the Notice, and made no attempt to contact Wynn's in response to the Notice. (J.A. 140 – 41.) Several months later, Bradley discovered that the Vehicle required repairs, including replacement of the battery pack due to deterioration, and took the Vehicle to Armstrong Auto. (J.A. 40, ¶¶ 70-72; 144 – 45; 210.) Armstrong Auto contacted Wynn's and Wynn's informed

11

Armstrong Auto that there was no coverage on the Vehicle because the

Application had been previously rejected, as set forth in the Notice.  (J.A. 166 –

67.)

## III.    <u>SUMMARY OF ARGUMENT</u>

On appeal, Bradley argues that the District Court erred in concluding that

Armstrong Auto was not Wynn's agent, whether actual or by estoppel.  Bradley

further argues that Armstrong Auto had apparent authority to act on Wynn's

behalf.  Bradley contends that because there was an agency relationship and/or

apparent authority, Wynn's is liable under the VCPA and the MMWA for

statements made by Armstrong Auto.  However, the District Court properly

granted summary judgment in favor of Wynn's, as Bradley failed to identify a

single disputed material fact to preclude the entry of summary judgment that there

is no agency as between Wynn's and Armstrong Auto.

First, Armstrong Auto is not Wynn's actual agent.  The Virginia Supreme

Court has identified four factors in determining the existence of a master-servant

relationship.  Of those factors, the Virginia Supreme Court identified the power of

control as determinative.  The undisputed material facts in this case conclusively

establish that Wynn's had no power to control Armstrong Auto in any way

whatsoever, not even in regards to how it offered its customers a VSC application.

Notably, the Dealer Agreement specifically states that its parties expressly

12

intended that there is no agency relationship between them, and clearly identifies Armstrong Auto as an independent contractor with no right or obligation to bind Wynn's to a VSC. Furthermore, Wynn's provided no training or training materials, monitoring or ongoing guidance to Armstrong Auto in respect of VSCs. In fact, there was not a single communication between Armstrong Auto and Wynn's until Bradley brought the Vehicle to Armstrong Auto for service repairs. The District Court's ruling as to actual agency in granting Wynn's MSJ should be upheld.

Second, Wynn's may not be held liable on a theory of agency by estoppel under Virginia law. Notably, agency by estoppel in Virginia is inapplicable to tort claims. Moreover, even if the doctrine of agency by estoppel were applicable to the claims at issue, the facts in the record fail to create agency by estoppel between Wynn's and Armstrong Auto. Critically, agency by estoppel must be created through the conduct of the principal and not by the actions of the alleged agent. The principal must cause a third party to believe that an agency relationship exists, and the third party must rely on that belief to his or her detriment.

Bradley can point to no evidence that would have reasonably caused her to believe an agency relationship existed between Wynn's and Armstrong Auto. The only time the name "Wynn's" was even mentioned to Bradley was when she was at Armstrong Auto while completing the VSC application. The Application

13

specifically indicated that there would be no coverage under the VSC unless and until Wynn's approved the Application. Wynn's did not have any direct contact with Bradley until it sent the Notice to inform her that the Vehicle was not eligible for coverage and the Application was rejected. The facts of this case simply do not justify Bradley's alleged belief that an agency relationship existed between Wynn's and Armstrong Auto. Indeed, Bradley candidly testified that she did not know or care about any such relationship. The District Court's ruling as to agency by estoppel in granting Wynn's MSJ should, therefore, be upheld.

Third, the doctrine of apparent authority is inapplicable to the facts of this case. Apparent authority requires the pre-existence of an actual agency relationship. As there is no such relationship here pursuant to the Dealer Agreement and all other facts surrounding the relationship between Wynn's and Armstrong Auto, apparent authority is inapplicable. The sole basis for Bradley's claim of apparent authority is that the Notice suggested that she speak with Armstrong Auto. Nevertheless, the Notice also stated that there was no VSC issued because the Vehicle was ineligible. There can be no apparent authority created from the Notice that would allow Armstrong Auto to contradict or override the Notice. Therefore, the District Court's ruling as to apparent authority in granting Wynn's MSJ should be upheld.

Fourth, even if this Court were to disagree with Wynn's position on agency, the facts in the record warrant entry of summary judgment in favor of Wynn's. Bradley's claims under the VCPA and the MMWA fail for several reasons.

The facts in the record fail to establish the VCPA claim because there was no reasonable reliance by Bradley. Bradley was in possession of written documents that directly contradicted the oral statements that she contends were made by Mr. Armstrong. The Application indicates in several places that it is merely that, an application, and Wynn's alone had to accept the Application before it became a VSC. Bradley cannot now cry foul when she knowingly declined to read the Application upon signing it. Likewise, Bradley's purported reliance on statements made by Mr. Armstrong are patently unreasonable in light of the Notice, which clearly informed Bradley that Wynn's rejected the Application. Given the great importance that Bradley allegedly placed on obtaining an extended warranty or service contract for the Vehicle at the time of her purchase, it simply was not reasonable for her to disregard the Notice and selectively believe the oral representations that she claims were made by Mr. Armstrong to ignore the Notice.

Moreover, paragraph 8 of the VCPA does not apply to the circumstances of this case, which involved a VSC application contingent upon Wynn's acceptance. In addition, there is no allegation in this case that Wynn's advertised its VSC or that Bradley ever saw such an advertisement.

15

Finally, the VCPA claim is fundamentally flawed in that the undisputed facts reveal that Bradley suffered no damages as a result of Wynn's conduct. Wynn's received the Application, and immediately notified Bradley, CAC and Armstrong Auto that the Vehicle was ineligible for coverage, and then issued the Refund. The evidence and undisputed facts prove that Bradley was credited for the rejection of the Application by CAC after it received a copy of the Notice and the Refund from Wynn's. The District Court's ruling as to the VCPA claim in granting Wynn's MSJ should be upheld.

The facts of this case also warranted entry of summary judgment in favor of Wynn's on the MMWA claim. Not only do the facts fail to establish an agency relationship, but they also fail to establish an essential element of the MMWA claim – a written contract. Bradley catapults over this essential requirement and presumes the existence of a VSC between her and Wynn's. However, no such VSC ever existed, and therefore the MMWA claim must fail. The District Court's ruling as to the MMWA claim in granting the Wynn's MSJ should be upheld.

Finally, Bradley has failed to identify an abuse of discretion by the District Court with respect to the Motion to Amend. Although Bradley argues that the District Court misconstrued the facts, it is Bradley that seeks to misconstrue the allegations in her own proposed amended pleading. Despite her arguments to the contrary, Bradley's proposed amended VCPA claim relies on proving an agency

16

relationship between Armstrong Auto and the existence of an actual VSC between Wynn's and Bradley. Thus, the Motion to Amend is futile on its face and, moreover, it was raised at a time that was highly prejudicial to Wynn's. The District Court's ruling on the Motion to Amend was not an abuse of discretion and was entirely appropriate; it should likewise be upheld.

## IV.   ARGUMENT

### A.   Summary Judgment

#### 1.   Standard of Review.

It is well established that this Court's review of the District Court's ruling on summary judgment is *de novo*. Accordingly, this Court is obligated to review the "facts in the light most favorable to, and drawing all reasonable inferences in favor of, the nonmoving party." *Cortel Va. LLC v. Verizon Va., LLC,* 752 F.3d 364, 370 (4th Cir. 2014). When there "are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law[,]" summary judgment is appropriate. *Id.* (citing *Garofolo v. Donald B. Heslep Assocs., Inc.*, 405 F.3d 194, 198-99 (4th Cir. 2005)). A court should grant summary judgment against a party who fails to show, with specific facts beyond the pleadings, the existence of every essential element to its case where it will bear the burden of proof at trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 – 23 (1986).

Despite the generous standard of review afforded to the non-moving party, "the nonmoving party is not relieved of its burden to prove that there is a disputed material fact which warrants overturning the judgment entered by the district court." *Cortel Va. LLC,* 752 F.3d at 370 *(*citing *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002)). A non-moving party must provide more than a mere scintilla of evidence and may not rest on mere conclusory allegations or speculation. *Id.* The Supreme Court has concluded:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Notably, this Court is not limited by the considerations of the District Court and must affirm a grant of summary judgment if any valid grounds are found on appeal, even if the District Court did not consider those grounds in reaching its decision. *See Egbuna v. Time-Life Libraries, Inc.,* 153 F.3d 184, 186 (4th Cir. 1998).

18

**2.     The District Court Properly Granted Summary Judgment in Favor of Wynn's on All Counts of the Counterclaim Based on the Absence of an Agency Relationship Between Wynn's and Armstrong Auto.**

Bradley concedes that Wynn's itself did not make any misrepresentations to her. Rather, the claims against Wynn's are premised on a theory of *respondeat superior*. (Appellant's Brief at 16.) Bradley seeks to impose liability on Wynn's for the allegedly tortious conduct of Armstrong Auto, rather than any acts by Wynn's.

"When there is no substantial conflict in the facts and circumstances disclosed by the evidence, it becomes a question of law to be decided by the court whether one party was the agent of another." *Schwartz v. Brownlee*, 253 Va. 159, 162-163 (1997). Further a conflict "in the *positions* taken by the parties with respect to the agency question" does not amount to a conflict "in the *facts* with respect to that question." *Id.* at 162 (emphasis in original).

In this case, the facts and circumstances relevant to the relationship between Wynn's and Armstrong Auto, including the Dealer Agreement defining that relationship, are undisputed. They demonstrate, as a matter of law, that Armstrong Auto did not serve as an agent for Wynn's. Therefore, the District Court's decision granting summary judgment in favor of Wynn's should be affirmed.

19

### a. No Actual Agency Relationship Exists between Wynn's and Armstrong Auto.

Under Virginia law, an employer is liable for the tortious conduct of an employee but not for that of an independent contractor. *Sanchez v. Medicorp Health Sys.*, 270 Va. 299, 304 (2005). *See Virginia Iron, Coal & Coke Co. v. Odle's Adm'r*, 128 Va. 280, 287-289 (1920); *Terril v. Credit Acceptance Corp.*, 2010 U.S. Dist. LEXIS 31269 at *6-7 (W.D. Va. Mar. 30, 2010) (applying this rule in the context of intentional torts). Four factors are relevant to the determination of whether a master-servant relationship exists: "(1) selection and engagement; (2) payment of compensation; (3) power of dismissal; and (4) power to control the individual's work." *Ogunde v. Prison Health Servs.*, 274 Va. 55, 60 (2007). "The first three factors are not essential to the existence of the relationship; the fourth, the power of control, is determinative." *Naccash v. Burger*, 223 Va. 406, 418-419 (1982). Indeed, Bradley concedes that she must prove the element of control in order to prevail on her claims against Wynn's. (Appellant's Brief at 23-24.)

For this purpose, the critical criterion is "control or right to control the methods or details of doing the work, not control of the results." *Wells v. Whitaker*, 207 Va. 616, 624 (1966). For example, in *Hesse v. Ebbets*, 2007 U.S. Dist. LEXIS 93464 (E.D. Va. Dec. 20, 2007), a realtor was held to be an independent contractor of a realty company. The court explained that the realty company had no authority to control the realtor's schedule, to insist that he carry a

20

minimum workload, or to command his presence at meetings. *Id.* at *10. "Rather, it could only demand his best efforts to solicit listings, clients, and contracts—i.e., the end product." *Id.* at *10-11.

The Virginia Supreme Court has held that where there is no control over the day-to-day operations, there is no agency relationship. *See Murphy v. Holiday Inns, Inc.,* 216 Va. 490 (1975). In *Murphy*, the plaintiff filed suit against Holiday Inns for personal injuries sustained at a motel, alleging that the motel operator (a franchisee) was the defendant's agent. Under the franchise agreement, the franchisee had to obtain approval from Holiday Inns for the motel building's "plans, specifications, feasibility studies, and locations," to use the Holiday Inns trade name, signs, and other symbols, to observe the Holiday Inns rules of operation, make quarterly reports to Holiday Inns, and submit to periodic inspections. *Id.* at 493-94. Moreover, Holiday Inns provided training for all of the franchisee's employees. *Id.* at 494. Nonetheless, the Virginia Supreme Court granted summary judgment in favor of Holiday Inns, finding there was no agency relationship because Holiday Inns exercised no control over the day-to-day operations of the motel. *Id.* at 495. *See also Saiyed v. Council on American-Islamic Rels. Action Network, Inc.*, 2015 U.S. Dist. LEXIS 10205 at *35-41 (D.D.C. Jan. 29, 2015) (finding no agency under Virginia law based on absence of control).

Similarly, in *Jones v. C.H. Robinson Worldwide, Inc.*, 558 F. Supp. 2d 630, 633-634 (W.D. Va. 2008), the plaintiff was injured in an automobile accident and filed suit against the driver of the truck, the owner of the truck (AKJ Enterprises, Inc., ("AKJ")), and C.H. Robinson, a freight broker that had assigned the route to AKJ. The evidence showed that C.H. Robinson "would typically arrange the dates and times for pickup and delivery, obtain the pickup and delivery addresses, [and] communicate any specific limitations or directions as to the loading or unloading of cargo." *Id.* at 637. C.H. Robinson would also "communicate any time sensitivity issues for the load, and provide directions for transport of the load to the carrier and its drivers." *Id.* Drivers were required to provide C.H. Robinson with updates at frequent intervals, and C.H. Robinson had the ability to terminate a carrier's right to transport a load. *Id.* Nonetheless, despite C.H. Robinson's detailed involvement and certain control related to AKJ, the court held that C.H. Robinson was not liable under a theory of *respondeat superior*. *Id.* at 639. The court ruled that the written agreement between them, which stated that AKJ was acting as an independent contractor of C.H. Robinson, was clear. *Id.* at 638-639. The court further held that C.H. Robinson did not control AKJ's drivers' schedules or routes, and did not have authority to terminate any particular driver. *Id.* at 639.

Here, the Dealer Agreement not only states that Armstrong Auto is not

Wynn's agent, but specifically provides that Armstrong Auto is not authorized to

enter into or bind Wynn's to any contractual liabilities:

> No Agency.  Dealer is not an employee or agent of
> Administrator [i.e. Wynn's] for any purpose whatsoever,
> but is an independent contractor.  Dealer does not have
> nor shall it hold itself out as having any right, power or
> authority to create any contract or obligation, either
> express or implied, on behalf of, in the name of or
> binding upon Administrator unless Administrator shall
> consent thereto in writing.

(J.A. 187, ¶ 1.B(6).)  Armstrong Auto is clearly an independent vendor primarily

engaged in the sale of used vehicles to its own customers.  (J.A. 219, ¶ 2.)   In

connection with the sale of these vehicles, Armstrong Auto sometimes asks

customers if they wish to purchase an extended warranty or vehicle service

contract, including sometimes a VSC.  (J.A. 219, ¶ 5.)  If the customer chooses to

purchase a VSC, Armstrong Auto will assist the customer in submitting a VSC

application. (J.A. 219, ¶ 6.)   It is undisputed that Armstrong Auto has no actual

authority to bind Wynn's to a VSC; this is stated explicitly in the Dealer

Agreement,  (J.A. 187, ¶ 1.B(6)), and has been confirmed by both Wynn's and

Armstrong Auto.  (J.A. 184, ¶ 4; 219 ¶ 4.)  The VSC application form reiterates

that Wynn's has the right to reject it in its own sole discretion, and specifically

identifies Wynn's (the "Administrator") as a separate party from Armstrong Auto

(the "Selling Dealer").  (J.A. 200.)

The evidence of record overwhelmingly supports the District Court's conclusion that Armstrong Auto is not subject to Wynn's control.  As Bradley concedes, Wynn's did not provide any ongoing monitoring or guidance to Armstrong Auto.  (Appellant's Brief at 8.)  Wynn's did not even provide basic training or instructions to Armstrong Auto or its employees on how to market VSCs, let alone dictate how to do that.  (J.A. 172.)  Indeed, there was no communication *whatsoever* between Wynn's and Armstrong Auto until several months after the Bradley transaction.  (J.A. 148; 170-71.)

Wynn's does not have the power to hire or fire Mr. Armstrong or any other employees of Armstrong Auto, does not control how Mr. Armstrong or any other employees are paid, and does not decide the times during which Armstrong Auto is open for business.  (J.A. 175; 184-85, ¶¶ 5-7; 220, ¶¶ 10-11.)  Wynn's does not own the land or the building in which Armstrong Auto operates and does not own the furniture or the computer equipment used by Armstrong Auto.  (J.A. 185, ¶ 8; 220, ¶ 12.)  Armstrong Auto is paid a flat fee only for each VSC application that is Wynn's approves.  (J.A. 150-51.)  CAC, not Wynn's, pays the fee to Armstrong Auto out of the VSC Price.  (J.A. 185, ¶ 9; 220, ¶ 9.)

Under the Dealer Agreement, Armstrong Auto promised to use its best efforts to market VSCs.  (J.A. 187.)  However, Armstrong Auto is not required to offer a VSC application to every customer who purchases a used vehicle, and the

24

decision of whether to provide a VSC application (or that of another provider) to any particular customer is in the sole discretion of Armstrong Auto. (J.A. 185, ¶ 10; 220, ¶ 13.) In fact, Armstrong Auto often chooses not to offer a VSC application during the sale of a used vehicle, because it is not profitable to do so on certain vehicles or for certain customers. (J.A. 150-51; 180-81.)

In the face of this evidence, Bradley relies on the imprecise, one-time use of the term "agent" by Wynn's corporate representative, Alfred Armenteros ("Mr. Armenteros"), during a deposition. (J.A. 465-66.) The proffered testimony was Mr. Armenteros's attempt to distinguish Wynn's from the other entities involved in the transaction, Armstrong Auto and CAC. Plaintiff's counsel asked Mr. Armenteros what steps Wynn's takes to allow a person purchasing a vehicle from a dealership to rescind the entire transaction – meaning the purchase of the vehicle. Mr. Armenteros attempted to clarify that Wynn's has no authority to rescind the purchase of a vehicle, and this decision would have to be made by other parties.[2] When later asked regarding his use of the term "agent", Mr. Armenteros expressly denied that Wynn's used Armstrong Auto as its agent at the time that Bradley purchased the Vehicle and completed the Application (J.A. 470.)

Moreover, as Bradley concedes, "[t]he relationship of the parties does not depend upon what the parties themselves call it, but rather in law what it actually

_____

[2] This testimony was also clarified in the errata pages. (J.A. 473.)

25

is." *Murphy*, 216 Va. at 492.  Agency is a term of art.  Mr. Armenteros was not asked to offer a legal opinion concerning the alleged agency relationship, and did not intend to define Armstrong Auto's legal status through his testimony.  As the District Court found, "he's not talking in legal terms."  (J.A. 538.)  The use of an imprecise word during a deposition cannot change the underlying relationship between the parties.

Bradley misleadingly asserts that "for all its dealers like Armstrong Auto, Wynn's expects and directs customers to ask the dealer which Wynn's service contract is right for them."  (Appellant's Brief at 26.)  This is based on one line in a Wynn's marketing brochure which states, "Ask your dealer about the plan that is right for you."  As noted in Wynn's response to Interrogatory No. 2, Wynn's *generally* provides a "Dealer Kit" to dealerships, which includes that brochure. (J.A. 475–76.)  However, Mr. Armstrong testified that Armstrong Auto never actually received any part of the Dealer Kit.  (J.A. 480–85.)  Therefore, the brochure has no bearing on the relationship between Wynn's and Armstrong Auto.

Finally, Bradley relies on generic contractual language stating that Armstrong Auto would offer VSC applications "in compliance with Administrator's instructions and procedures."  (J.A. 187.)  However, such language does not rise to the level of day-to-day operational control necessary to support *respondeat superior* liability.  *See Murphy*, 216 Va. at 494 (franchisee was not an

26

agent even though it observed the franchisor's rules of operation); *McGhee v. United States*, 2014 U.S. Dist. LEXIS 24509 at *12 (W.D. Va. Feb. 24, 2014) (doctors were not employees of a Veterans Affairs medical center even though the medical center "required them to comply with its bylaws, policies, and procedures in exchange for medical privileges").

In fact, the instructions and procedures set forth in the Dealer Agreement (there were no others) are *de minimus*. First, Armstrong Auto was required to use the VSC application forms provided by Wynn's, and to remit to CAC the proceeds received in connection with a VSC application. (J.A. 187, ¶¶ 1.B(1), 1.C.) Second, Armstrong Auto was not permitted to submit a VSC application on an ineligible vehicle, and could only submit a VSC application on the date the vehicle was sold. (J.A. 187, ¶ 1.B(1).)

Those constraints are far weaker than those identified in *Murphy*, 216 Va. 490, and in *Jones,* 558 F. Supp. 2d 630. Under the authority of those cases, Judge Urbanski correctly held as a matter of law that Armstrong Auto is an independent contractor:

> The Virginia Supreme Court has keyed in on control. One of the factors it talks about in these cases on agency is control. And there isn't any evidence of control in this case. . . .
>
> Control matters because if Wynn's has the ability to dictate and control what Armstrong does, then Wynn's ought to be bound by what Armstrong says. But here,

27

> Wynn's has no control over Armstrong.  All Armstrong
> has the ability to do is market these programs and offer
> them to people who want to buy them with the car.  Send
> it off to Wynn's for approval or not.  That's what this
> document says.  I just don't see where there's any
> evidence of control.

(J.A. 514-15.)

Bradley *has not attempted* to distinguish the authority cited above.  Instead, she relies on cases which are entirely inapposite.  For example, Bradley cites *Bloxom v. Rose*, 151 Va. 590, 598 (1928), which held that "one may be the agent of another as to third persons, although the relation of principal and agent does not exist." As the quoted language demonstrates, that case addresses agency by estoppel, not actual agency.  *See Giordano v. Atria Assisted Living, Va. Beach, LLC*, 429 F. Supp. 2d 732, 739 (E.D. Va. 2006).  ("In *Bloxom* the Supreme Court of Virginia found a father, who tended his son's farm for a year, to be the apparent agent of his son.")  Principles of apparent agency should not be imported into the analysis of whether an actual agency relationship existed between Wynn's and Armstrong Auto.

Bradley baldly mischaracterizes the case of *Nationwide Ins. Co. v. Patterson*, 229 Va. 627 (1985) as holding that "when an entity allows another to present and explain its contract to a consumer, that entity is liable for the misrepresentations of the person used to explain its contract."  (Appellant's Brief at 22.)  That is not what *Nationwide* says.

In *Nationwide*, the plaintiff secured an insurance policy through "Nationwide's local representative and agent, E. Bolivar Huffman." *Id.* at 628. Nationwide subsequently made changes to the policy, and sent documents reflecting the policy changes to Huffman, with instructions to deliver the documents to the plaintiff. *Id.* at 629. Huffman then visited the plaintiff's business and explained the documents to him. *Id.* Huffman was listed as Nationwide's agent in the telephone directory, and used Nationwide's letterhead. *Id.* There is no indication that Nationwide even disputed that Huffman was its agent and subject to its control. Moreover, any such dispute would have been foreclosed by statute. *See* Va. Code Ann. § 38.2-1801(A).[3] Rather, Nationwide's argument was "that it is an innocent principal and cannot be held responsible for Huffman's misrepresentation." *Id.* at 632. The court rejected Nationwide's argument based on a straightforward application of *respondeat superior*.

Plainly, *Nationwide* did not abrogate the "determinative" requirement that an agent must be subject to the principal's control. *See Naccash*, 223 Va. at 418-419. *Nationwide* merely acknowledged that a principal could be held liable for the acts of an agent over which the principal has control, which is a foregone conclusion under the insurance statute.

---

[3] Virginia Code section 38.2-1801(A) provides that "A licensed agent shall be held to be the agent of the insurer that issued the insurance sold, solicited, or negotiated by such agent in any controversy between the insured or his beneficiary and the insurer."

In this case, by contrast, the evidence conclusively demonstrates that Wynn's did not have or exercise operational control over Armstrong Auto. There was no communication whatsoever between Wynn's and Armstrong Auto until months after the transaction at issue. (J.A. 148; 170-71.) And, even if the glaring contrast of an insurance case is disregarded, unlike in *Nationwide*, there is no evidence that Armstrong Auto is or ever has been advertised as an agent of Wynn's, used Wynn's letterhead, or displayed Wynn's insignia at Armstrong Auto's location (or anywhere for that matter). (J.A. 182.) Thus, far from supporting Bradley's claim of actual agency, the *Nationwide* case usefully illustrates the shortcomings of her argument.

Bradley has not cited any authority holding that, when the determinative element of operational control is missing, an independent vendor becomes an agent of a third party merely by speaking to its own customers about a third party's products or services. A salesperson employed by Best Buy does not become an actual agent of Sony merely because he explains the features of a television and the manufacturer's warranty.

Even more analogous to the facts at bar, there is no doubt that a travel agent can speak with a customer concerning the purchase of an airline ticket, explain terms and conditions, and even provide marketing materials, without exposing the airline to tort liability for the travel agent's misrepresentations. If the flight is

30

cancelled, the travel agent can explain this to the customer and discuss alternative travel options. So long as the airline does not have operational control over the travel agency, it is not liable for the travel agency's torts in Virginia.

Here, Armstrong Auto is an independent vendor primarily engaged in the sale of used vehicles to its own customers. (J.A. 219, ¶ 2.) Armstrong Auto is no different from an electronics store selling televisions or a travel agent selling airline tickets. There is no evidence establishing the level of control necessary for actual agency. As such, the District Court correctly decided the issue of actual agency as a matter of law.

### b.    *The Doctrine of Apparent Authority Is Not Applicable.*

Section I.B. of Bradley's brief addresses the doctrine of apparent authority. (Appellant's Brief at 32-39.) However, "[t]he definition of the term 'apparent authority' presupposes the existence of an agency relationship." *Sanchez v. Medicorp Health Sys.*, 270 Va. 299, 304 (2005) (noting that the terms "apparent authority" and "apparent agency" should not be used interchangeably and the distinction between these doctrines should not be blurred). The doctrine of apparent authority operates to expand the scope of an agency relationship that *actually exists*. It does not create an agency relationship out of whole cloth.

Bradley contends that Armstrong Auto is an actual agent of Wynn's for the limited purpose of marketing VSCs. (Appellant's Brief at 34.) As explained

31

above, although the Dealer Agreement contemplates that Armstrong Auto will provide VSC applications to its own customers, the Dealer Agreement does not create an actual agency relationship for any purpose because the determinative element of control is missing.  Therefore, Bradley's claim of apparent authority is not a proper basis for attacking the District Court's ruling.

At the Hearing, Bradley's counsel explained that the apparent authority argument relates specifically to Bradley's conversation with Mr. Armstrong after she had received the Notice.   Mr. Armstrong allegedly told Bradley that the Notice was issued in error due to a computer glitch and that she should disregard the Notice.  (J.A. 39, ¶¶ 64-65; 140.)  Bradley contends that this statement was within the scope of Mr. Armstrong's "apparent authority" because the Notice instructed her to contact Armstrong Auto if she had any questions.  (J.A. 207.)

However, the purpose of Wynn's suggestion was to point Bradley in the direction of the person best able to provide her with assistance: Armstrong Auto. (J.A. 185, ¶ 14.)  The Notice did not identify Mr. Armstrong or Armstrong Auto as having any authority in regard to Wynn's; to read it otherwise or import such meaning is to simply unreasonable.

Even if such difficulties are ignored, the District Court correctly rejected the claim of apparent authority because "[t]his letter says there's no agreement here, no contract."  (J.A. 553-54.)  "An implied agency is never construed to extend

32

beyond the obvious purposes for which it is apparently created." *Mosell Realty Corp. v. Schofield*, 183 Va. 782, 792 (1945). Here, the Notice at most contemplated that Mr. Armstrong would provide further clarification regarding the Vehicle's ineligibility for a VSC. Mr. Armstrong was never authorized by Wynn's to countermand the Notice entirely, nor was he clothed with the appearance of such authority.

### c. *Bradley Cannot Prevail Under a Theory of Agency by Estoppel.*

Agency by estoppel "must be based on the actions of the alleged principal," and "not on the actions of the alleged agent." *Wells Fargo Bank, N.A. v. Old Republic Nat'l Title Ins. Co.*, 2009 U.S. Dist. LEXIS 118655 at *18-19 (E.D. Va. Dec. 17, 2009) (citing *Kern v. J.L. Barksdale Furniture Corp.*, 224 Va. 682, 685 (1983)). *See also Sanchez*, 270 Va. at 303-304; *Noble Sec., Inc. v. MIZ Eng'g, Ltd.*, 611 F. Supp. 2d 513, 534 (E.D. Va. 2009) (citing *Lynn v. Farm Bureau Mut. Auto. Ins. Co.*, 264 F.2d 921, 924 (4th Cir. 1959) (interpreting North Carolina law)). "A purported agent cannot unilaterally create an apparent agency through his own words or conduct." *Saffold v. Conway & Assoc.*, 66 Va. Cir. 179, 183 (Va. Cir. Ct. 2004) (citing *Bardach Iron & Steel Co. v. Charleston Port Terminals*, 143 Va. 656, 668 (1925)). The principal must cause the plaintiff reasonably to believe that an agency relationship exists, and the plaintiff must rely on such belief to her detriment. *Nolde Bros., Inc. v. Chalkley*, 184 Va. 553, 567 (1945); *Wright v.*

33

*Shortridge*, 194 Va. 346, 353 (1952); *Giordano*, 429 F. Supp. at 737. Agency by estoppel "is not easily established, even in circumstances where the alleged apparent agent seems closely connected to the principal." *Giordano*, 429 F. Supp. 2d at 738.

Here, Bradley must demonstrate that ***Wynn's*** engaged in conduct that caused her reasonably to believe that Armstrong Auto was Wynn's agent. However, there is no evidence that Wynn's took any action that was in any way inconsistent with Armstrong Auto's true and only role as an independent vendor. On the day that Bradley purchased the Vehicle, the only time Mr. Armstrong mentioned anything about Wynn's was when he asked Bradley to sign the Application. (J.A. 133.) At that time, Mr. Armstrong stated only that Bradley "was getting the Wynn's contract." (J.A. 133 and 183.) The Application itself identified the dealer (Armstrong Auto) and administrator (Wynn's) as separate entities and unequivocally stated, right above Bradley's signature, that there would be no coverage on the Vehicle unless Wynn's, in its sole discretion, accepted the Application. (J.A. 200.) Wynn's did not engage in any conduct in connection with the Bradley transaction that could *remotely* support a reasonable belief that Armstrong Auto was its agent. Rather, the exact opposite is true; Wynn's actions exclusively support a finding that Wynn's and Armstrong Auto were wholly independent of one another.

34

This case is easily distinguishable from *Hardin v. Alexandria Ins. Co.*, 90 Va. 413 (1894).  In *Hardin*, the customer had previously engaged in several transactions with an insurance agent, all of which had been ratified by the insurance company and resulted in the issuance of valid insurance policies.  *Id.* at 415.  The company also paid the insurance agent's rent.  *Id.* at 417.  The insurance company's repeated conduct gave rise to the appearance of agency, meeting the requirements for agency by estoppel.  *Id.*  In this case, by contrast, Wynn's did not ratify any action taken by Armstrong Auto.  To the contrary, Wynn's immediately repudiated Armstrong Auto's alleged misrepresentations by rejecting the Application and issuing the Notice.

It is undisputed that there was no direct communication between Wynn's and Bradley until the Notice was issued.  Stretching context and disingenuously arguing by inference, Bradley contends that Wynn's held out Armstrong Auto as its agent by issuing the Notice, solely because the Notice suggested that Bradley contact Armstrong Auto with any questions.  That suggestion is the sole basis upon which Bradley seeks to establish agency by estoppel on appeal.  (Appellant's Brief at 41.)

However, according to her own testimony, Bradley did not know the Notice was issued by Wynn's.  (J.A. 135; 138; 142-43.)  The import of Bradley's

35

devastating admission is that Bradley could not *possibly* have relied on the Notice to believe that Armstrong Auto was acting as an agent for Wynn's.

In fact, the reason Wynn's advised Bradley to contact Armstrong Auto with any questions was because Mr. Armstrong was responsible for assisting Bradley with the Application that was rejected by Wynn's, and he might therefore have been able to rectify the situation by repurchasing the Vehicle or by helping Bradley find another appropriate service product for the Vehicle. The Notice was not intended to hold out Armstrong Auto or Mr. Armstrong as an agent of Wynn's, but rather to point Bradley in the direction of the person most capable of offering her assistance with the Vehicle. (J.A. 185, ¶ 14.) The Notice cannot be reasonably read as Bradley wishes, and the District Court was correct to reject Bradley's argument.

Moreover, to prevail on a claim of agency by estoppel, Bradley must demonstrate that she took some action in reliance on her belief in the agency relationship. Bradley's own deposition testimony undercuts that theory:

> Q.   Did you think Travis Armstrong worked for Wynn's?
> A.   I wasn't sure. I just know I was getting my warranty that I wanted.
> Q.   Okay.
> A.   And I wasn't going to purchase the car without one.
> Q.   So you didn't know one way or another if he worked for Wynn's or not?
> A.   No.

36

(J.A. 139.)  In other words, Bradley was allegedly relying on Mr. Armstrong to provide her with the coverage that she wanted, because that is what he allegedly promised her.  Bradley did not know or care whether Mr. Armstrong served as an agent for Wynn's.  Because Bradley could not prove the elements of agency by estoppel, the District Court properly granted summary judgment on this theory of liability and its ruling in support of Wynn's should be upheld.  (J.A. 550.)

### 3.    The District Court Properly Granted Summary Judgment on the VCPA Claim.

On appeal, Bradley simply asserts that she does not need to prove all the elements of fraud in order to state a cause of action under the VCPA.  However, the District Court properly granted summary judgment on the VCPA claim because the conduct of Armstrong Auto cannot be attributed to Wynn's, and because Bradley cannot meet the required elements of reasonable reliance and damages.

#### a.    *Armstrong Auto's Conduct Cannot Be Attributed to Wynn's to Support the VCPA Claim.*

The VCPA claim against Wynn's is premised entirely on the conduct of Armstrong Auto.  For the reasons explained above, Armstrong Auto is not an actual or apparent agent of Wynn's.  Even if Armstrong Auto had violated the VCPA, Wynn's could not be held liable.

Bradley protests that Wynn's should not be permitted to "frustrate the purposes of the VCPA by using Armstrong Auto to solicit members of the public

to contract with Wynn's while at the same time avoiding responsibility for Armstrong Auto's misrepresentations." (Appellant's Brief at 31.) However, and appropriately, the VCPA is intended to apply only to those who are guilty of fraudulent acts or practices. *See* Va. Code § 59.1-200. The VCPA does not operate to extend liability throughout the chain of distribution of consumer products and services in the absence of an agency relationship.

As explained below, and as correctly found by the District Court, Bradley cannot meet the elements of the VCPA claim because she cannot prove reasonable reliance and damages, and even if Bradley had a valid cause of action under the VCPA, her sole remedy would lie against Armstrong Auto. As the District Court put it, "I feel bad for her, but her claim's against the dealer." (J.A. 556.) Wynn's promptly notified Bradley in writing within seven days from the purchase of the Vehicle that it rejected the Application; Judge Urbanski aptly ruled that there is "absolutely no basis under the law for which Wynn's can be held liable for Armstrong's subsequent representation . . . to ignore its written letter." (J.A. 556.) Rather than frustrating the purpose of the VCPA, the District Court's ruling properly puts the burden of a violation on the person who committed it, and properly absolves those parties—like Wynn's—who exercised no control over the allegedly wrongful conduct.

38

### b.    *The Doctrine of Agency by Estoppel Does Not Apply to Tort Claims Under Virginia Law.*

Bradley's theory of agency by estoppel fails as a matter of law for another reason.  Under Virginia law, the doctrine of agency by estoppel cannot be used to impose vicarious liability on an employer for torts committed by an independent contractor.  *Sanchez*, 270 Va. at 308.  Thus, assuming *arguendo* that an agency by estoppel agency relationship existed between Wynn's and Armstrong Auto, it cannot be used to support a finding of a VCPA violation by Wynn's.  While this was not the explicit basis for the District Court's ruling, it is an alternative ground on which the judgment can be affirmed.  *See Cochran v. Morris*, 73 F.3d 1310, 1315 (4th Cir. 1996).

In *Sanchez*, the Virginia Supreme Court affirmed the circuit court's demurrer on a claim of vicarious liability for negligence.  The court rejected the claim of agency by estoppel, explaining as follows:

> We have applied the theory of apparent or ostensible agency in cases involving contract claims.  But, in the tort context, we have mentioned apparent agency only once, in *Murphy v. Holiday Inns, Inc.*, 216 Va. 490, 491-92, 219 S.E.2d 874, 875 (1975). However, in that slip and fall case, we did not decide the issue of apparent agency because the plaintiff had not properly preserved the issue for appeal. . . .
>
> In virtually all these [out of state] cases imposing vicarious liability, the particular jurisdiction involved had already adopted the theory of apparent agency or agency by estoppel as a basis of tort liability when the

> jurisdiction used the theory to hold a hospital vicariously liable for negligent medical care rendered by an emergency room physician working as an independent contractor. . . . Unlike these jurisdictions, in Virginia, we have not previously imposed vicarious liability on an employer for the negligence of an independent contractor on the basis of apparent or ostensible agency, or agency by estoppel. We find no reason to do so in the specific context presented in this case.

*Id.* at 306-08 (some internal citations omitted).

Indeed, the Virginia Supreme Court has never recognized agency by estoppel as a basis for any form of tort liability. In *Craddock v. A & E Moving Storage, Inc.*, 82 Va. Cir. 491 (Norfolk 2011), the plaintiff filed suit against two moving and storage companies for fraudulent inducement and violation of the VCPA. The court granted a demurrer to both of those claims. With respect to the VCPA claim, the court ruled:

> Plaintiffs argue in Count II that Mayflower is vicariously liable for the VCPA violations committed by its apparent agent, New Bell. Under Virginia law, an apparent agent may bind his principal only in contract. Virginia has not adopted the theory of apparent agency as a basis of tort liability. *Sanchez v. Medicorp Health Systems*, 270 Va. 299, 618 S.E.2d 331 (2005).

*Id.* at 493. As to the claim for fraudulent inducement, the court held: "Plaintiffs argue that Mayflower is vicariously liable for the fraudulent statements of its apparent agent. Apparent agency does not provide a basis for vicarious liability in tort." *Id.* While *Craddock* is not binding on this Court, it is persuasive for the

40

interpretation of Virginia law. Particularly given the other glaring holes in

Bradley's theory of agency by estoppel, this theory should not be used to impose

vicarious tort liability on Wynn's for the alleged conduct of Armstrong Auto who

is undisputedly an independent vendor. Therefore, even if Mr. Armstrong were an

apparent agent of Wynn's—which he is not—Wynn's would not be liable for torts

committed by Mr. Armstrong or Armstrong Auto. The District Court's decision to

grant summary judgment on this theory of liability should be affirmed.

### c.      Paragraph 8 of Va. Code § 59.1-200.A Is Not Applicable.

Bradley's VCPA claim relies, in part, on Va. Code § 59.1-200.A(8)

("paragraph 8"), which prohibits "[a]dvertising goods or services with intent not to

sell them as advertised, or with intent not to sell at the price or upon the terms

advertised." Paragraph 8 of the VCPA does not apply here because the

Application clearly stated that it was contingent on approval from Wynn's; that

there would be no binding VSC unless and until Wynn's approved the Application.

As the District Court found: "These documents say it is an application for an

optional warranty coverage and it's only binding when accepted. It's not accepted

here. There is no violation of the VCPA." (J.A. 558.) Moreover, Bradley has no

claim under Paragraph 8 of the VCPA because there is no allegation that Wynn's

advertised the VSC or that Bradley saw such an advertisement. Bradley did not learn of the option to apply for the VSC until she arrived at Armstrong Auto.[4]

### d.    Bradley Cannot Prove Reasonable Reliance.

Where, as here, the VCPA claim is premised on an alleged misrepresentation, the plaintiff must prove reliance. *See Owens v. DRS Auto. Fantomworks, Inc.*, 764 S.E.2d 256, 260 (2014). In that regard, reliance must be "reasonable and justified." *Adardour v. American Settlements, Inc.*, 2009 U.S. Dist. LEXIS 56675 at *8 (E.D. Va. July 2, 2009), *aff'd*, 382 Fed. Appx. 249 (4th Cir. 2010).

This Court has repeatedly held that, under Virginia law, a plaintiff cannot reasonably rely on oral statements while in possession of a contrary statement in writing. *See Ostolaza-Diaz v. Countrywide Bank, N.A.*, 360 Fed. Appx. 504 (4th Cir. 2010); *Foremost Guaranty Corp. v. Meritor Sav. Bank*, 910 F.2d 118 (4th Cir.

---

[4] Paragraph 8 of the VCPA also provides:

> In any action brought under this subdivision, the refusal by any person, or any employee, agent, or servant thereof, to sell any goods or services advertised or offered for sale at the price or upon the terms advertised or offered, shall be prima facie evidence of a violation of this subdivision.

Va. Code § 59.1-200.A.8. Thus, an offer for sale constitutes prima facie evidence but does not rise to the level of a violation unless goods or services have actually been advertised.

42

1990).  A plaintiff who has failed to read the relevant documents cannot be heard to complain.  *See Johnson v. Washington*, 559 F.3d 238, 245 (4th Cir. 2009).

In *Ostolaza-Diaz*, 360 Fed. Appx. at 506, a claim for fraud filed against a mortgage broker for his alleged misrepresentations was dismissed because the plaintiffs were presented at closing "with documents that unambiguously spelled out the terms of the loan and contradicted [the mortgage broker's] oral statements." *Id.* at 507.  Therefore, the court held that the plaintiffs' reliance was not reasonable.

The same rule has been applied under the VCPA.  In *Adardour v. American Settlements, Inc.*, 2009 U.S. Dist. LEXIS 56675 at *4, the plaintiff was erroneously informed by a settlement company that it was too late to rescind a loan transaction. However, the plaintiff was provided with a written notice specifying the correct deadline.  The court held that because the plaintiff had the opportunity to review the written notice, her reliance on oral representations to the contrary was not reasonable and would not support a cause of action under the VCPA.

In this case, it was not reasonable for Bradley to believe that the Application was binding before Wynn's approved it or to believe that she would receive coverage for battery repairs to the Vehicle, because these alleged representations were contradicted by the documents in her possession that she signed acknowledging that she had read and understood.  It was particularly unreasonable

43

for Bradley to disregard the Notice based on Mr. Armstrong's alleged oral

representations.

> **i.      It Was Not Reasonable for Bradley to Believe That She Had Entered Into a Binding Contract That Would Provide Coverage for Battery Repairs.**

The Application is titled "Contract/Application" and unambiguously states

that the document is an application that must be accepted by Wynn's.  (J.A. 200)

("This document is an Application for a Vehicle Service Contract.  If this

Application is accepted by [Wynn's], then it will become Your Contract.").  The

Application also provides—directly above the signature line—that it can be

rejected in Wynn's sole discretion if the Vehicle is deemed ineligible.  (J.A. 200.)

Those provisions demonstrate unequivocally that the submission of the Application

could not have resulted in a binding contract (a VSC) until it was reviewed and

accepted by Wynn's.

The Application signature block, which Bradley signed, contains an

acknowledgement by Bradley that she read the terms and conditions of the

Application including, but not limited to, its "exclusions" section.  (J.A. 200.)

Bradley testified that she had an opportunity to review the Application before

signing it, but that she simply chose not to read it more carefully and chose not to

ask Mr. Armstrong any questions about the Application, because she thought it

would take too long.  (J.A.127-28, 131-32.)  Therefore, no matter what Bradley

claims that Mr. Armstrong told her, it was unreasonable for Bradley to believe that the Application was a final, binding contract.

Likewise, the Application specifically excludes coverage for battery repairs. (J.A. 202, ¶ 22.) Therefore, even if Wynn's had entered into a binding VSC with Bradley—which it did not—repairs to the Vehicle's battery would not have been covered. Bradley had no reasonable basis for relying on Mr. Armstrong's alleged statements to the contrary.

Bradley blames Mr. Armstrong for handing her a large stack of so many documents that she was incapable of reading them, (Appellant's Brief at 10), but there is no evidence that Mr. Armstrong prevented Bradley from carefully reviewing the Application. Both Bradley and Mr. Armstrong testified that she could have reviewed the transaction documents more carefully but chose not to do so because she did not want to spend the time. (J.A. 127-128; 131-132; 176.)

Notably, the *Ostolaza-Diaz* case involved a claim for fraud in connection with the refinancing of a home mortgage. *Ostolaza-Diaz*, 360 Fed. Appx. at 506. The plaintiffs in that case were presumably provided with a substantial number of documents in connection with that transaction. Nonetheless, because they failed to read the documents, their reliance on the defendant's oral statements was held to be unreasonable. *Id.* at 507. Here, any purported reliance by Bradley is no different.

45

Bradley is a competent adult. She made the decision to purchase the Vehicle, to finance it, and to apply for a VSC. As a result of her decisions, Bradley had to sign documents—which surely came as no surprise to her. Some of those documents were necessary to execute the various transactions. Others were disclosures required by law. There is no allegation (and certainly no evidence) that Armstrong Auto provided Bradley with extraneous documents solely for the purpose of dissuading her from reviewing them.

Bradley could have chosen not to purchase the Vehicle, or not to finance it, or not to apply for a VSC; but if she wanted the Vehicle, the financing, and a VSC, she needed to sign documents. She chose to sign them without reading them. It is axiomatic that as a competent adult she must also stand with the consequences.

> ### ii.    It Was Not Reasonable for Bradley to Disregard the Notice Clearly Informing Her That the Application Was Rejected.

It was patently unreasonable for Bradley to disregard the Notice. The Notice unambiguously stated that the "contract has been voided." (J.A. 207.) Even if, as alleged, Mr. Armstrong orally contradicted the Notice, Bradley had no basis for ignoring the written document in her possession. In any event, there's no basis for liability here under the VCPA.

According to Bradley, obtaining some warranty coverage was very important to her—she avers that she would not have purchased the Vehicle without

46

such coverage.  (J.A. 36-37, ¶¶ 35, 38.)  Yet, when Bradley received the Notice, she apparently disregarded it based on alleged oral representations to her by Mr. Armstrong, and made no effort to corroborate those representations about something that was supposedly critical to her.  (J.A. 140.)  She did not even bother to call the telephone number for Wynn's administrative offices listed on the Notice.  (J.A. 141.)  As Bradley had no reasonable basis for acting as she did, she cannot assert a cause of action under the VCPA.  The District Court's decision on the VCPA claim must be affirmed.

### e.    *Bradley Has No Damages.*

The VCPA authorizes an action by "[a]ny person who suffers loss as the result of a violation of this chapter."  Va. Code § 59.1-204.  The plain language of the statute requires proof of damages.  *See Alston v. Crown Auto, Inc.,* 224 F.3d 332, 336 (4th Cir. 2000); *Owens*, 764 S.E.2d at 260.  In *Alston*, 224 F.3d at 336, this Court held there was no basis for a VCPA claim because the defendant reimbursed the plaintiff for the improper charges.  Likewise, in *Owens*, 764 S.E.2d at 261, the plaintiff's complaints about the defendant's work were not redressable under the VCPA because the plaintiff could demonstrate no resulting harm.

47

Here, there is no resulting damage that flows from the actions of Wynn's.[5]

Wynn's received the Application and immediately identified the Vehicle as

ineligible.  (J.A. 185, ¶ 14).  The money that Wynn's received in connection with

the Application was contingent on Wynn's approval of the Application.  (J.A. 185,

¶ 13).  Wynn's promptly returned the full amount of those funds to CAC in

accordance with standard procedure as stipulated in the Application.  (J.A.186, ¶

15; 203; 216-18.)  Thus, Bradley cannot claim any damages whatsoever resulting

from the conduct of Wynn's; she cannot prevail under the VCPA.

> **4.** **The District Court Properly Granted Summary Judgment in Favor of Wynn's on Bradley's Claim for Violations of the MMWA.**

As with the VCPA claim, Bradley seeks to hang her hat on various agency

theories in order to maintain her cause of action under the MMWA.  However, as

outlined above, Bradley's arguments with respect to agency and apparent authority

must fail.  In addition to the arguments set forth above, Bradley's MMWA claim

fails as there is no binding written contract between Wynn's and Bradley.

The MMWA allows a private action to be brought only for failure to comply

with statutory obligations or obligations under a "written or implied warranty" or a

"service contract."  Bradley makes no allegations that Wynn's failed to comply

---

[5] The District Court did not need to reach this argument in rejecting Bradley's
VCPA claim, but it is an alternative basis for affirmance.  *See Cochran v. Morris*,
73 F.3d 1310, 1315 (4th Cir. 1996).

with its statutory duties or an implied warranty.  Thus, Bradley must prove that Wynn's failed to comply with its obligations pursuant to the terms of a service contract (here, a VSC).  That is, however, an impossibility; there was no VSC in existence between Bradley and Wynn's, as the District Court correctly ruled upon review of the ample evidence in this case.

The MMWA defines "service contract" as "a contract *in writing* to perform, over a fixed period of time or for a specified duration, services relating to the maintenance or repair (or both) of a consumer product."  15 U.S.C. § 2301(8) (emphasis added).  It is undisputed that no written contract was entered into between Wynn's and Bradley.  Bradley offers no evidence that the Application was ever accepted by Wynn's as required pursuant to the plain language on the face of the Application.

Indeed, the only evidence with respect to any action taken by Wynn's on the Application is the Notice to Bradley informing her that the Vehicle was ineligible for coverage and the Application was rejected.  Wynn's voided the Application and it never became a binding VSC.  Armstrong's oral representations would have no impact on the terms of the Application or a VSC, because parol evidence should not be considered.  Generally, "parol evidence of prior or contemporaneous oral negotiations are generally inadmissible to alter, contradict, or explain the terms of a written instrument provided the document is complete, unambiguous, and

49

unconditional." *Ilozor v. Hampton Univ.,* 2007 U.S. Dist. LEXIS 33032 at *36 (E.D. Va. May 3, 2007). Therefore, Armstrong's alleged oral statements are inadmissible to convert the Application into a binding VSC.

Bradley conveniently overlooks the need for a written contract under the MMWA and proceeds to argue that Wynn's has somehow breached a duty of good faith and fair dealing in the absence of a contractual relationship, thereby violating the MMWA. Even if one were to accept the proposition that a violation of such duties constituted a redressable harm under the MMWA, there must first exist a contract to impose the duties – a glaring fact that is actually underscored by the cases cited by Bradley, which address parties' obligations to carry out their duties under an existing contract. *See Hooters of Am., Inc. v. Phillips,* 173 F.3d 933, 940 (4th Cir. 1999); *Virginia Vermiculite, Ltd. V. W.R. Grace & Co.-Conn.,* 156 F.3d 535, 542 (4th Cir. 1998). Moreover, despite what Bradley states in her brief, the foregoing implausible argument is not properly before this Court, as Bradley failed to raise arguments with respect to "good faith" and fair dealing before the District Court.[6] *See Wiedman v. Exxon Mobil Corp.,* 2015 U.S. App. LEXIS 276 at *12 (4th Cir. 2015).

---

[6] In lieu of arguing good faith and fair dealing, Bradley argued that Wynn's had a duty to "tell the truth" as the basis that the MMWA claim remained viable. Her argument was completely unsupported by any statutory provision, regulation or judicial decision. Perhaps this explains Bradley's abandonment of her "tell the

50

Even if the Application were deemed a binding contract, the evidence in the record fails to demonstrate a breach.  The repairs Bradley sought were to her vehicle's battery.  Pursuant to the exclusion outlined in the Application, battery repairs are not covered under a VSC.  (J.A. 202, ¶ 22.)

As a last ditch effort to salvage her MMWA claim, Bradley argues that neither Wynn's nor Armstrong refunded the taxes paid by her in connection with the Application, which Bradley claims to be a duty under the non-existent VSC.  Not only does this argument conflate Wynn's with Armstrong Auto, but it also ignores the undisputed fact that Wynn's refunded all of the monies it received related to the Application.  (J.A. 186, ¶ 15).  Bradley's argument further ignores paragraph 5 of the Buyer's Order between Bradley and Armstrong Auto, which imposed the duty to pay taxes—and presumably the corresponding duty to obtain a refund—on the Buyer (*i.e.*, Bradley).  (J.A. 194, ¶ 5.).  Bradley's appeal of the MMWA claim is plainly meritless.  The District Court's order granting summary judgment in favor of Wynn's as to the MMWA claim must be affirmed.

## B.  <u>Motion to Amend</u>

### 1.  Bradley Has Failed to Present Any Facts That Support a Finding That the District Court Abused Its Discretion in Rejecting Her Motion to Amend.

Bradley also seeks to have this Court overturn the District Court's denial of

---

truth" argument for the equally inapplicable "good faith" and "fair dealing" argument now proffered on appeal.

the Motion to Amend to add a new claim to the litigation (the "Fifth Count").[7]  A

review of a district court's denial of a motion to amend is reviewed pursuant to the

abuse of discretion standard.  *See Nourison Rug Corp. v. Parvizian,* 535 F.3d 295,

298 (4th Cir. 2008).  Generally, a district court is considered to have abused its

discretion when "it acts in an arbitrary manner, when it fails to consider judicially-

recognized factors limiting its discretion, or when it relies on erroneous factual or

legal premises."  *U.S. v. Henry,* 673 F.3d 285, 291 (4th Cir. 2012).  However, a

harmless error does not justify reversal.  Fed. R. Civ. Proc. 61.  *See Taylor v.

Virginia Union Univ.*, 193 F.3d 219, 235 (4th Cir. 1999).  "Given the broad

latitude afforded both parties and the court in shaping the pleadings, it is hardly

surprising that trial court rulings pertaining to amendments to pleadings . . . even if

mistaken, are rarely found to be so prejudicial as to affect substantial rights."

Moore's Federal Practice - Civil § 61.03.  "Such issues, then, will usually fail to

overcome the bar of the harmless error rule."  *Id.  See Harris v. Bolin*, 950 F.2d

547, 550 (8th Cir. 1991).

　　　The arguments offered by Bradley to support her request to overturn the

District Court's decision are without merit.  Bradley fails to identify any erroneous

---

[7] Despite the fact that Bradley originally moved to amend the Counterclaim to
include two new claims, her appeal on this issue only seeks to overturn the District
Court's decision with respect to the new VCPA claim (the Fifth Count), and
therefore only the Fifth Count is addressed here.  Nevertheless, both proposed
claims are inappropriate and were properly denied by the District Court.

factual or legal premises on which the District Court relied.  Notably, the District Court ruled that the Motion to Amend was denied for the same reasons as it articulated for granting Wynn's MSJ.  Specifically, Judge Urbanski ruled from the bench, stating: "For the same reasons, the Court denies the motion to amend the counterclaim.  Those are additional representations which rely on an agency theory which the Court rejects."  (J.A. 559.)  In addition to granting summary judgment in favor of Wynn's because the District Court found no agency, it also concluded that there was no VSC in existence between Bradley and Wynn's.  (J.A. 558.)

Bradley contends that the District Court erred when it ruled that the claims were dependent on proving agency.  The allegations in the Fifth Count are wholly dependent upon the finding of an agency relationship between Wynn's and Armstrong Auto, yet Bradley somehow argues that the Fifth Count is not dependent on establishing such a relationship.

The allegations supporting the Fifth Count specifically relate to the representations made to Bradley about the VSC Price at the time she was negotiating the purchase of the Vehicle.  Her allegations state that "the true dollar amount of Bradley's service contract was misrepresented to her[]" (J.A. 232, ¶ 82), and that she was charged an inflated amount for the contract."  (J.A. 236, ¶¶ 118 – 19.)  Only Armstrong Auto could have made such representations, as they relate to the VSC Price as set forth in the Buyer's Order and in the Financing Contract.

53

(J.A. 193 & 195.)  Those agreements were between Armstrong Auto and Bradley.

(J.A. 193 & 195.)  Wynn's was neither a party to either of those contracts nor

directly involved in their negotiation.  As such, any representations made to

Bradley regarding the VSC Price would have been made by Armstrong Auto.

Thus, Bradley's theory is inherently dependent on establishing proof of the

existence of an agency relationship between Armstrong Auto and Wynn's.

Accordingly, the District Court properly rejected the Motion to Amend after

granting Wynn's MSJ and specifically holding that no agency relationship existed

between Wynn's and Armstrong Auto; that ruling should be upheld.

> **2.  Even Assuming *Arguendo* That an Agency Relationship Existed, the District Court Properly Rejected Bradley's Motion to Amend Because It Was Highly Prejudicial to Wynn's and Without Merit.**

As Bradley's brief cites, this Court has held that "leave to amend a pleading

should be denied only when the amendment would be prejudicial to the opposing

party, there has been bad faith on the part of the moving party, or the amendment

would have been futile."  *Laber v. Harvey*, 438 F.3d 404, 426-27 (4th Cir. 2006).

As this Court similarly held in *Equal Rights Ctr. v. Niles Bolton Assocs.,* 602 F.3d

597, 603 (4th Cir. 2010), a motion for leave to file an amended complaint may be

properly denied "when the amendment would be prejudicial to the opposing

party."  In that case, the plaintiff sought to amend its pleading after the close of

discovery and on the eve of the deadline for filing dispositive motions.  *Id.*  This

Court reasoned that allowing the amendment would have required reopening

discovery resulting in prejudice to the opposing party. *Id.*

Here, Bradley not only sought leave to amend well after the close of

discovery, she also filed the Motion to Amend after each of the parties had filed

motions for summary judgment and within forty-two days of trial. The prejudice

to Wynn's is undeniable. If the District Court had allowed the amendment,

Wynn's would have been required to engage in additional discovery in order to

assess the validity of the vague and unsupported claims of a discrepancy of

"several hundred dollars." (Am. Countercl. ¶ 83, J.A. 232.) Purportedly, in order

to mitigate the obvious prejudice to Wynn's, Bradley argues that Bradley would

not resist an additional deposition on the subject, agreed to supplement her

response to interrogatories, and would not oppose the filing of a new motion for

summary judgment by Wynn's. (Appellant's Brief at 45.) However, that offer, in

and of itself, demonstrates that Bradley knew of the prejudice to Wynn's. To

conduct new depositions after the close of discovery and/or prepare a new,

additional motion for summary judgment after Wynn's had already prepared

Wynn's MSJ would cause Wynn's significant additional expense and would

therefore prejudice Wynn's.

Finally, the Motion to Amend is flawed on its face. As noted in Wynn's

Opposition to Bradley's Motion to Amend, Bradley's amendment would not

survive a motion to dismiss and is therefore futile. *Perkins v. U.S.,* 55 F.3d 910, 917 (4th Cir. 1995). The Fifth Count failed either to satisfy the basic pleading requirements set forth in *Iqbal* and *Twombly* or of Federal Rule of Civil Procedure 9(b). Ironically, the articulated basis of the Fifth Count was set forth in this appeal, rather than in Bradley's amended pleading.

Even if Bradley met the basic pleading requirements, her amended VCPA claim fails for other reasons. First, it fails to allege a material misrepresentation made to Bradley. It is disingenuous to argue that the Application quoted Bradley a price or the "true dollar cost." The purchase of an automobile is a negotiation. Bradley is not entitled to anything beyond what she negotiated. During that negotiation, Bradley agreed to pay the $1,580.00 VSC Price for the Application. Moreover, Bradley cites language from the Application that deals with the selling dealer and the distribution of the money related to the VSC Price. The provision states:

> The Selling Dealer agrees that all sums paid by You under the terms of this Contract, excluding a commission earned by the Selling Dealer and an administrative fee earned by Us, shall be submitted on your behalf to National Casualty Company for the purpose of Insuring the payment of Your claims under this Contract. Protection under this Contract is the primary responsibility of National Casualty Company. The Selling Dealer agrees that it has no authority to control the use or withdraw such sums, or any portion thereof.

Nowhere does that provision indicate that this is how the VSC Price is set. The

56

only instruction there is how the selling dealer is to distribute the funds.

Second, there can be no damage relating to the newly alleged misrepresentation. Bradley negotiated the purchase of the Vehicle and completed the Application and paid the VSC Price. The fact that the money was distributed in a way different from what Bradley anticipated does not cause Bradley any damage. Stated differently, Bradley could have been charged the same amount and the money could have been distributed as Bradley argues it should have been. The end result is the same. Furthermore, as the evidence of this case reveals, all monies transferred to Wynn's were refunded to CAC, and CAC credited Bradley's account with an amount *in excess* of the VSC Price. (J.A. 186 ¶ 15; 421.) Thus, Bradley's proposed claim is futile. Requiring Wynn's to defend against such a claim at this juncture in the litigation would be improper.

For the foregoing reasons, the District Court properly denied the Motion to Amend and Bradley has failed to identify an abuse of discretion meriting a reversal of the District Court's decision.

## V.    <u>CONCLUSION</u>

The District Court committed no error on any of the rulings appealed by Bradley. Bradley has failed to show disputed facts that would preclude the granting of Wynn's MSJ. The record fails to establish facts to prove an agency relationship between Armstrong Auto and Wynn's under Virginia law. Moreover,

57

the undisputed facts fail to establish the existence of any contract between Wynn's and Bradley, any reasonable reliance by Bradley, or any damages resulting from Wynn's conduct.

Likewise, the District Court did not abuse its discretion in denying the Motion to Amend, and specifically with respect to the Fifth Count argued by Bradley now in her brief. Bradley's proposed amendment is inextricably linked to representations made by Armstrong Auto in the transaction for the purchase of the Vehicle. As there is no agency relationship, that claim is futile. Moreover, it was raised after the close of discovery and after motions for summary judgment had been filed. Permitting the amendment would have been highly prejudicial to Wynn's.

Accordingly, Wynn's requests that the entry of summary judgment in favor of Wynn's and the denial of the Motion to Amend be affirmed. Furthermore, should this Court in its honorable discretion deem this appeal to be frivolous, Wynn's respectfully requests that it award Wynn's its costs and attorney's fees associated herewith.

## VI.    <u>STATEMENT AS TO ORAL ARGUMENT</u>

Oral argument is not warranted under the circumstances of this case.  The

District Court made no error in its rulings.  Moreover, the facts and legal

arguments are adequately presented in the briefs and record, and the decisional

process would not be significantly aided by oral argument.

<div style="margin-left: 40%;">

WYNN'S EXTENDED CARE, INC.
By Counsel

/s/_____
Virginia M. Sadler
Virginia State Bar No. 48736
John H. Carstens
Virginia State Bar No. 22826
Attorney for Wynn's Extended Care, Inc.
JORDAN COYNE LLP
10509 Judicial Drive, Suite 200
Fairfax, Virginia 22030
(Tel.) (703) 246-0900
(Fax) (703) 591-3673
E-Mail:  v.sadler@jocs-law.com

</div>

## <u>CERTIFICATE OF COMPLIANCE (FRAP 32(A)(7)(b)(c)</u>

1.  This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because the brief contains 13,954 words, excluding the parts of the brief exempted by Fed. R. App. P. 37(a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Word in 14 Point Times New Roman.


Dated:        February 23, 2015              _____/s/_____
                                             Virginia M. Sadler
                                             Virginia State Bar No. 48736
                                             John H. Carstens
                                             Virginia State Bar No. 22826
                                             Attorney for Wynn's Extended Care, Inc.
                                             JORDAN COYNE LLP
                                             10509 Judicial Drive, Suite 200
                                             Fairfax, Virginia 22030
                                             (Tel.) (703) 246-0900
                                             (Fax) (703) 591-3673
                                             E-Mail: v.sadler@jocs-law.com

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a copy of the foregoing Response Brief of

Appellee was on this 23rd day of February, 2015, served by electronic means

through the ECF system, which will then send a notification of such filing to:

Thomas D. Domonoske, Esq.
461 Lee Avenue
Harrisonburg, Virginia 22802
E-Mail:  tomdomonoske@earthlink.net


Timothy E. Cupp, Esq.
Shelley Cupp Schulte, P.C.
1951 Evelyn Byrd Avenue, Suite D
Harrisonburg, Virginia 22803
E-Mail:  cup@scs-work.com


_____/s/_____
Virginia M. Sadler
Virginia State Bar No. 48736
John H. Carstens
Virginia State Bar No. 22826
Attorney for Wynn's Extended Care, Inc.
JORDAN COYNE LLP
10509 Judicial Drive, Suite 200
Fairfax, Virginia 22030
(Tel.)  (703) 246-0900
(Fax)  (703) 591-3673
E-Mail:  v.sadler@jocs-law.com